# Richmond

GEORGE CALAMOS V. COMMONWEALTH OF VIRGINIA.

October 8, 1945.

Record No. 3007.

Present, All the Justices.

The opinion states the case.

*William K. Goolrick*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *M. Ray Doubles, Assistant Attorney General*, for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

This case is before us on a writ of error to review a judgment holding the plaintiff in error guilty of contempt of court for selling alcoholic beverages to Cecil Pritchett, in violation of a previous order of the court entered pursuant to section 35 of The Alcoholic Beverage Control Act (Acts 1934, ch. 94, p. 123, as amended by Acts 1936, ch. 255, p. 427, Michie's Code of 1942, section 4675(35)), interdicting Pritchett and enjoining and prohibiting "all persons" "from selling, giving or furnishing" such beverages to him. By the further provisions of the order under review, the plaintiff in error, because of his sale of such beverages to Pritchett, was himself interdicted, and "all persons" were restrained from selling, giving or furnishing alcoholic beverages to him (the plaintiff in error).

The incidents leading to the judgment complained of are these:

On May 30, 1944, the Circuit Court of Spotsylvania county, in a proceeding instituted against Pritchett, under section 35 of The Alcoholic Beverage Control Act, found him to be an unfit person "to be allowed to purchase alcoholic beverages," and "all persons" were "prohibited from selling, giving or furnishing" such beverages to him "until the further order" of the court. As provided in the statute, a copy of the order of interdiction was published once in the Free Lance-Star, a newspaper published in the city of Fredericksburg and having a general circulation therein and in Spotsylvania county.

Calamos, the plaintiff in error, has been a resident of Fredericksburg for more than thirty-five years, during which he has conducted a restaurant there. For a number of years he has sold at this establishment light wines and

beer, under license from the Alcoholic Beverage Control Board. On November 28, 1944, Calamos personally sold to Pritchett a half-gallon bottle of peach wine, an intoxicating beverage. On the same day an employee of Calamos sold to Pritchett a like quantity of the same beverage. On the next day Pritchett, after having consumed the greater portion of this wine, became intoxicated and killed two persons in Spotsylvania county. Shortly thereafter he was convicted of murder and sentenced to life imprisonment.

A rule was issued by the lower court against Calamos, directing him to appear and show cause why he should not be fined for contempt of court and interdicted as an improper person to use or sell ardent spirits by reason of his sale of alcoholic beverages to Pritchett, in violation of the order of May 30, 1944.

In response to this rule, Calamos appeared and plead not guilty. After the evidence had been heard by the court without a jury, the order under review was entered.

The plaintiff in error makes these two contentions: (1) The evidence is insufficient to sustain the finding that he was guilty of contempt of court in selling the wine to Pritchett, in violation of the provisions of the order whereby the latter was interdicted. (2) The evidence is insufficient to sustain the finding that he (the plaintiff in error) should be interdicted as an improper person to use or sell ardent spirits because of his having sold the wine to Pritchett.

A third assignment of error, that the trial court was without jurisdiction to enter the order of interdiction against him, and that such jurisdiction was vested solely in the Alcoholic Beverage Control Board, was abandoned at the oral argument before us and need not be considered.

In addition to the entry of the order of interdiction against Pritchett, and its publication in a single issue of the local newspaper, the Commonwealth proved by four witnesses that Pritchett had a bad reputation with respect to his use of intoxicating liquors, that he was given to excessive drinking, and that when intoxicated he often became violent. Only one of these witnesses lived in Fredericksburg. The

others resided some distance away. It was also shown that the sergeant of the city of Fredericksburg, at the direction of the judge of the lower court, gave to Calamos a list containing the names of fourteen persons who had been interdicted by the Circuit Court of Spotsylvania county on February 16, 1944. This list did not contain Pritchett's name, as he had not then been interdicted, but Calamos was warned by the sergeant to "watch the Free Lance-Star as Judge Bazile will add interdictions to this list from time to time." Subsequently, after Pritchett and others had been interdicted, the sergeant gave their names to a number of persons in Fredericksburg licensed to sell wines and beer, but Calamos was not among the licensees who were so notified.

Calamos, who according to the uncontradicted testimony enjoys an excellent reputation, testified that he did not see the order of interdiction against Pritchett published in the local newspaper, nor had he ever heard of it before the institution of the contempt proceedings against him; that while he had known Pritchett for a number of years, he had not seen him "for two years" prior to the time he (Pritchett) purchased the wine; and that at the time Pritchett was well dressed, well behaved, and showed no signs of being under the influence of liquor.

He was asked, on cross-examination, whether he knew Pritchett "had a bad reputation as to the use of intoxicating liquor." In reply he said that he "had never seen Cecil Pritchett take a drink and knew nothing of his reputation;" "that he had not heard about Cecil Pritchett's reputation."[1]

Calamos' employee, who made a sale to Pritchett on the same day, did not know Pritchett either personally or by

---

[1] The written opinion of the trial court relates this incident thus: "On his cross-examination the defendant said: 'I had (*sic*) heard about Pritchett's reputation, but I never saw him drink.'" Apparently this and other discrepancies between the evidence as certified and the findings of fact as related in the trial court's written opinion, are due to the fact that the verbatim evidence was not reported and the opinion was prepared and filed before the evidence was reduced to narrative form and certified.

reputation and had no knowledge that he had been interdicted.

The contempt proceedings against the plaintiff in error are based on Code, section 4521, the material portion of which reads as follows:

"The courts and judges may issue attachments for contempt, and punish them summarily, only in the cases following:

\* \* \* \* \* \*

"Fifth. Disobedience \* \* \* to any lawful process, judgment, decree, or order of the said court."

The Commonwealth concedes that there is no evidence that either Calamos or his employee had actual notice or knowledge of the order of interdiction against Pritchett. But it insists that by reason of the publication of the order of interdiction, notice or knowledge of it was "imputed" to Calamos, and that he cannot escape such imputation by saying that he did not read the local newspaper and failed to see the publication.

We are cited to no authority which supports this contention. On the contrary, it is well settled that one who is not a party to an injunction suit cannot be brought into contempt for disobeying an order or decree of court, unless it be shown that he had actual notice or knowledge of it prior to the commission of the acts upon which the charge of contempt is based. 12 Am. Jur., Contempt, section 27, p. 409; 17 C. J. S., Contempt, section 18, pp. 23, 24.

This rule was recognized and applied by us in *Kidd* v. *Virginia Safe Deposit, etc., Corp.*, 113 Va. 612, 614, 615, 75 S. E. 145. We there quoted with approval this statement from 9 Cyc. 12: "In order to punish a person for contempt of court for violation of an order, judgment, or decree, it must appear that such order, judgment, or decree has been personally served on the one charged, or that he has had actual notice of the making of such order or rendition of such judgment or decree." Other authorities to the same effect are cited in the opinion.

It is true that there is an exception to this rule where

the decree of injunction operates *in rem* against an illegal use of specific real property. 12 Am. Jur., Contempt, section 27, p. 409. This exception is based on the theory that the injunction decree "is an incumbrance which runs with the land, of which everybody must take notice." *State* v. *Cline*, 151 Kan. 764, 100 P. (2d) 637, 640. No such feature is involved in the present case.

In 39 Am. Jur., Notice and Notices, section 21, pp. 245, 246, we find this apt statement: "As, a broad, general proposition it may be stated that no one is chargeable with constructive notice of a statement, advertisement, or other matter printed in a newspaper, in the absence of a statute expressly authorizing such publication and declaring the effect of a compliance with its terms, or unless it is seen by the person to be charged. In other words, the notice is either actual or is inoperative, and the rule is not at all affected by the fact that the person to be charged was a subscriber to the paper or was in the habit of reading it. If he must be presumed to know every fact which happens to be published in a daily paper merely because he is a subscriber or a habitual purchaser of it, he can make himself safe only by ceasing to take it, or else by reading every word in it. To do one would be a heavy burden on a man of business, and the other would be a serious privation. The law puts no citizen to a choice of such evils."

The text is supported by numerous cases. See also, 46 C. J., Notice, section 42, p. 549.

In *Garrigan* v. *United States*, 89 C. C. A. 494, 163 F. 16, 23 L. R. A. (N. S.) 1295 (cert. denied, 214 U. S. 514, 29 S. Ct. 696, 53 L. Ed. 1063), the Circuit Court of Appeals reversed a finding of the lower court that one charged with contempt for violating the terms of an injunction had full knowledge thereof by reason of its publication in local newspapers and posted notices. The court there said (163 F., at page 22) that a person charged with contempt "is clearly entitled to the benefit of 'the presumption of innocence,' * * * which arises alike in respect of notice and conduct, as 'an instrument of proof created in

his favor;' and the mere inference of 'full knowledge,' derived solely from the above-mentioned facts, is without force, as we believe, to overcome the express denial of knowledge on the part of the accused, fortified by the presumption thus defined."

In *State* v. *Grady*, 114 Wash. 692, 195 P. 1049, 15 A. L. R. 383, the lower court enjoined certain named parties, "and all others," as members of the I. W. W., from committing certain acts. Wallace, who was not a party defendant, was convicted of contempt for violating the decree. There was no evidence that a copy of the decree had been served on him, or that he had actual knowledge of it. But copies of the decree had been posted in numerous public places and its issuance was the subject of considerable newspaper publicity and comment. The conviction was reversed, the court holding that such publication and posting were insufficient to show that Wallace had actual knowledge of the injunction decree.

We find no provision in The Alcoholic Beverage Control Act indicative of a legislative intent to change these recognized principles.

Section 35 of the Act, as amended, provides that the Alcoholic Beverage Control Board "shall cause a copy" of the order of interdiction "to be published at least once in a newspaper having a general circulation in the county or city in which the court which issued the order is held, and in such other newspaper as the Board may direct. It shall thereafter as long as such order shall remain in effect be unlawful, as provided in section forty-two of this act, for any one to sell alcoholic beverages to such interdicted person except in accordance with the provisions of sections thirty-two, thirty-three and thirty-four of this act."

Section 42 of the Act, as amended by Acts 1936, ch. 255, p. 433 (Michie's Code of 1942, sec. 4675 (42) ), provides: "If any person shall, except pursuant to the provisions of sections thirty-two, thirty-three or thirty-four of this act, sell any alcoholic beverages to any person and at the time

of such sale shall know or have reason to believe that the person to whom the sale is made is * * * (b) an interdicted person, * * * he shall be guilty of a misdemeanor.

There is nothing in either of these sections to indicate that the purpose of the publication of the order of interdiction is other than to give notice to one who might actually see it. There is no suggestion that all persons selling alcoholic beverages are to be charged with notice of such publication irrespective of whether they may have seen it. On the contrary, the reference in section 35 to section 42, and the incorporation in the latter of the provision prohibiting a sale to one who the seller "shall know or have reason to believe" has been interdicted, indicate that the purpose of the publication is to convey actual and not merely constructive notice of its contents.

If the contention of the Commonwealth be sound, then every order of interdiction entered by any court of competent jurisdiction in the State would be binding on every salesman in every State store, as well as on every person licensed to dispense alcoholic beverages, wherever he may be located and irrespective of whether he may have had actual notice of such order.

Since the evidence fails to show that at the time the plaintiff in error sold the wine to Pritchett he (the plaintiff in error) had actual knowledge or notice of the interdiction order entered against Pritchett, the court erred in holding him (the plaintiff in error) in contempt for violating such order.

This brings us to the question of the sufficiency of the evidence to sustain the finding of the lower court that the plaintiff in error should be interdicted as an improper person to use or sell ardent spirits, because of his having sold the wine to Pritchett.

On this phase of the case the argument of the Attorney General runs thus: "When the defendant sold the beverages to Pritchett he made an unlawful sale. Section 4675(35),(b) of the Code." "Whoever makes an illegal sale of alcoholic

beverages may himself be interdicted. Section 4675 (35a),(a) of the Code."

■ The fallacy in this argument is that section 35 (b) of the Act does not flatly prohibit the sale to every interdicted person. To be unlawful the sale must be "as provided in section forty-two." Under section 42, a sale is illegal only if the seller "shall know or have reason to believe" that the purchaser is "an interdicted person," or within one of the other specified classes.

Section 42, as originally enacted (Acts 1934, ch. 94, p. 126), flatly prohibited the sale to certain specified persons, including "any interdicted person." Apparently the General Assembly thought this placed too great a burden on those who were licensed or required to sell alcoholic beverages, and consequently, by an amendment (Acts 1936, ch. 255, p. 433), added the provision outlawing the sale in case the seller "shall know or have reason to believe" that the sale is to a member of one of the prohibited classes.

In the case before us it is conceded that at the time of the sale in question neither Calamos nor his employee knew that Pritchett was "an interdicted person."

■ Nor do we find in the evidence any basis for the trial court's conclusion that Calamos had reason to believe that the purchaser (Pritchett) had been interdicted. It is uncontradicted that he had no knowledge of Pritchett's character, habits, or bad reputation. He had not seen Pritchett for two years. At the time of the sale in question, Pritchett's demeanor and appearance were good and he showed no signs of intoxication. Under these circumstances, why should he be charged with "reason to believe" that Pritchett had been interdicted?

■ It is argued that the plaintiff in error was at fault because before making the sale he did not inquire of Pritchett whether the latter had been interdicted. One must be guileless indeed to believe that this question, if propounded to Pritchett, or to any other customer similarly situated, would have been answered in the affirmative. Certainly, the failure to ask the question is no indication that the plaintiff

in error had reason to believe that Pritchett was an interdicted person.

It follows from what we have said that the trial court likewise erred in entering the order of interdiction against the plaintiff in error.

The judgment complained of is reversed and the rule against the plaintiff in error is dismissed.

*Reversed and dismissed.*