THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ALVIN RATLIFF, Defendant-Appellee.

Second District   No. 2—95—0282

Opinion filed July 26, 1996.—Rehearing denied September 3, 1996.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Fred M. Morelli, Jr., and Rene Cruz, both of Morelli, Cook & Petersen, of Aurora, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

The State appeals the trial court's order granting the motion of defendant, Alvin Ratliff, to dismiss two of the four counts against him on the basis of double jeopardy. Defendant was charged by a four-count information of unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1994)), battery (720 ILCS 5/12—3 (West 1994)), possession of a firearm without a firearm owner's identification card (430 ILCS 65/2 (West 1994)), and aggravated assault (720 ILCS 5/12—2(a)(1) (West 1994)). The trial court dismissed counts I (unlawful possession of a weapon by a felon) and III (possession of a firearm without a firearm owner's identification card) because the seizure and impoundment of defendant's automobile under a City of Aurora (Aurora) ordinance was premised upon the same factual transaction. The State filed this appeal pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)).

The State contends the trial court erred in dismissing counts I and III on double jeopardy grounds because the seizure and impoundment of defendant's automobile, as well as defendant's payment of fines and expenses, were remedial in nature. Defendant counters that his payment of a fine and expenses pursuant to the Aurora ordinance constituted a punishment for double jeopardy purposes and, therefore, any subsequent prosecution would be improper. We reverse.

On January 30, 1994, police officers answered a domestic violence call. After conducting a brief investigation, the officers found defendant in a parking lot. Defendant had driven to Aurora to visit his wife, who was living at a Marywood address. An alleged argument between defendant and his wife had prompted the domestic violence

call. Defendant allegedly pushed and threatened his wife. The officers arrested defendant. A search of defendant revealed live ammunition. A search of defendant's automobile produced a revolver.

Aurora filed an administrative action against defendant under section 29—48 of the Code of Ordinances of the City of Aurora (Code) (Aurora Code of Ordinances § 29—48 (eff. December 21, 1993)). Section 29—48 is entitled "Vehicle seizure and impoundment" and provides in pertinent part:

"A motor vehicle, operated with the knowledge of the owner of record, that is used in violation of Sections 29—43, 29—45, 29—46, 29—47, 29—101 or 29—102 of this Code or in violation of paragraphs 9—1, 9—2, 9—3.3, 11—6, 11—14, 11—15, 11—15.1, 11—16, 11—17, 11—18, 11—18.1, 11—19, 11—19.1, 11—19.2, 12—2, 12—4, 12—4.2, 12—4.3, 12—4.6, 12—4.7, 20—1, 20—1.1, 20—2, 24—1, 24—1.2, 24—2.1, 24—3.1, 24—3.3 or 33A—2 of the Criminal Code of 1961 (720 ILCS 5/9—1, 5/9—2, 5/9—3.3, 5/11—6, 5/11—14, 5/11—15, 5/11—15.1, 5/11—16, 5/11—17, 5/11—18, 5/11—18.1, 5/11—19, 5/11—19.1, 5/11—19.2, 5/12—2, 5/12—4, 5/12—4.2, 5/12—4.3, 5/12—4.6, 5/12—4.7, 5/20—1, 5/20—1.1, 5/20—2, 5/24—1, 5/24—1.2, 5/24—2.1, 5/24—3.1, 5/24—3.3 or [sic] 5/33A—2) or in violation of paragraphs 704, 705, 705.1, 705.2, or 708 of the Cannabis Control Act (720 ILCS 550/1—550/5.2 [sic]) or in violation of paragraphs 1401, 1401.1[,] or 1402 of the Controlled Substances Act (720 ILCS 570/401—570/402 [sic]) shall be subject to seizure and impoundment under this section. The owner of record of such vehicle shall be liable to the city for a penalty of five hundred dollars ($500.00) in addition to fees for the towing and storage of the vehicle.

(1) *** Said vehicle shall be impounded pending the completion of the hearings provided for in subsections (2) and (3) herein, unless the owner of the vehicle posts with the city a cash bond in the amount of five hundred dollars ($500.00) plus fees for the towing and storage of the vehicle.

***

(3) *** If, after the hearing, the hearing officer determines by a preponderance of the evidence that the vehicle, operated with the knowledge of the owner, was used in the commission of any of the violations set forth in this section, the hearing officer shall enter an order requiring the vehicle to continue to be impounded until the owner pays a penalty of five hundred dollars ($500.00 [sic]) plus fees for the towing and storage of the vehicle. The penalty and fees shall be a debt due and owing the city. However, if a cash bond has been posted the bond shall be applied to the penalty. If the hearing officer determines that the vehicle was not knowingly

used in such violation, he or she shall order the return of the vehicle or cash bond.

(4) Any motor vehicle that is not reclaimed within thirty (30) days after the expiration of the time during which the owner of record may seek administrative review of the city's action under this section, or the time at which a final judgment is rendered in favor of the city, may be disposed of as an unclaimed vehicle as provided by law. As used in this section, the 'owner of record' of a vehicle means the record title holder." Aurora Code of Ordinances § 29—48 (eff. December 21, 1993).

The hearing officer found that defendant "was arrested because of his actions in the domestic argument. A search of his person located bullets while a search of his car produced a gun. Therefore, the preponderance of the evidence demonstrates that section 29.48 [*sic*] of the *** Code *** was violated." Defendant paid the $500 fine and an additional $180, and his car was returned to him.

Subsequently, the State charged defendant by a four-count information. The trial court dismissed counts I and III on double jeopardy grounds.

■ In *In re P.S.*, 169 Ill. 2d 260 (1996), our supreme court laid out a test for whether a civil forfeiture followed by a criminal prosecution violates a defendant's constitutional protection against double jeopardy. For such civil and criminal proceedings to violate the prohibition against double jeopardy, three questions must be answered in the affirmative. *In re P.S.*, 169 Ill. 2d at 272-73. These questions are: (1) whether the civil forfeiture is "punishment" for double jeopardy purposes; (2) whether the civil forfeiture and criminal prosecution constitute punishment for the same offense; and (3) whether the civil forfeiture and criminal prosecution are separate proceedings. *In re P.S.*, 169 Ill. 2d at 272. Our supreme court based this three-stage analysis in large part on its interpretation of several United States Supreme Court opinions. See *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937 (1994); *Austin v. United States*, 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801 (1993); *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989).

A week before this opinion was to be distributed to the parties, the Supreme Court released its opinion in *United States v. Ursery*, 518 U.S. 267, 135 L. Ed. 2d 549, 116 S. Ct. 2135 (1996). *Ursery* held, *inter alia*, that civil forfeitures generally "do not constitute 'punishment' for purposes of the Double Jeopardy Clause" of the federal Constitution. See *Ursery*, 518 U.S. at 271, 135 L. Ed. 2d at 557, 116 S. Ct. at 2138. Thus, the Supreme Court disavowed any analysis of

federal double jeopardy issues using a three-stage process of the type adopted by the Illinois Supreme Court in *In re P.S.* on the basis of the *Halper, Austin,* and *Kurth Ranch* cases.

Several days before the release of this opinion, the Supreme Court issued its decision in *People v. Kimery,* 518 U.S. 1031, 135 L. Ed. 2d 1092, 116 S. Ct. 2577 (1996). Kimery was one of the defendants in the consolidated *In re P.S.* case. *Kimery* involved an appeal taken by the State from the Illinois Supreme Court's judgment affirming the appellate court's conclusion "that criminally prosecuting Kimery following the forfeiture of his automobile violated the double jeopardy clause." *In re P.S.,* 169 Ill. 2d at 270-71. The complete decision of the United States Supreme Court consisted of the following:

> "The petition for a writ of *certiorari* is granted. The judgment is vacated and the case is remanded to the Supreme Court of Illinois for further consideration in light of *United States v. Ursery,* 518 U.S. 267 (1996)."

As a result of the *Ursery* opinion and the vacation of *In re P.S.* by *Kimery,* the law of double jeopardy under the Illinois Constitution is in flux until our supreme court considers its judgment in light of *Ursery. In re P.S.* was based on both the Illinois and federal constitutional protections against double jeopardy. See *In re P.S.,* 169 Ill. 2d at 271 (stating—while determining the parties presented neither reasons nor arguments for varying the double jeopardy analysis under the Illinois as opposed to the federal Constitution—that the defendants raised their constitutional arguments under both). We do not read *Ursery* as vacating the portion of *In re P.S.* based on the Illinois Constitution. It is true the United States Supreme Court—as a jurisdictional prerequisite to granting *certiorari*—must be assumed to have determined the Illinois constitutional basis for the judgment in *In re P.S.* was not an independent and adequate state ground supporting the judgment. See *Michigan v. Long,* 463 U.S. 1032, 1040-41, 77 L. Ed. 2d 1201, 1214, 103 S. Ct. 3469, 3474, 3477 (1983) ("when *** a state court decision fairly appears to rest primarily on federal law *** and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so").

It is also true *In re P.S.* relied largely—although not exclusively—on federal case law. However, from these propositions it does not follow that on remand the Illinois Supreme Court is barred from reaching a different double jeopardy conclusion under the Illinois

Constitution than would be reached under the federal Constitution, *i.e.*, Kimery's prosecution following the forfeiture of his automobile violated his protection against double jeopardy under the Illinois Constitution. This is because the Illinois Constitution may extend additional or more expansive protections than its federal analog. See, *e.g.*, *People v. McCauley*, 163 Ill. 2d 414, 426, 445-46 (1994) (defendant's Illinois—but not his federal—constitutional rights to due process and privilege against self-incrimination were violated where: (1) defendant was undergoing custodial interrogation at a police station; (2) officers refused to allow his waiting attorney access to defendant; and (3) officers did not inform defendant his attorney was present and attempting to consult with defendant); *People v. McGee*, 268 Ill. App. 3d 32, 40-42 (1994) (police officer's good-faith reliance on a facially invalid statute cannot validate an otherwise unconstitutional search under Illinois Constitution although such reliance would be sufficient to legitimize such a search under federal Constitution); see also J. Nowak, R. Rotunda & J. Young, Constitutional Law § 1.6, at 20-21 (3d ed. 1986), citing *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 80-81, 88, 64 L. Ed. 2d 741, 751-52, 756, 100 S. Ct. 2035, 2040-41, 2044 (1980) (upholding state court decision creating a state constitutional right to distribute pamphlets and leaflets in a private shopping center even though federal Constitution provides no such right). It would be inappropriate for this court to predict how our Illinois Supreme Court will eventually rule in light of *Ursery*. Because of this, we will evaluate section 29—48 under the analytical frameworks established in both the *Ursery* and *In re P.S.* decisions.

■ We turn first to whether section 29—48 violates the federal protection against double jeopardy as announced in *Ursery*. In *Ursery*, the Supreme Court limited its analysis in *Austin* to cases arising under the excessive fines clause of the eighth amendment to the federal Constitution and declined to import this analysis into the Court's double jeopardy jurisprudence. *Ursery*, 518 U.S. at 271, 135 L. Ed. 2d at 567, 116 S. Ct. at 2146-47. The Court also seemed to limit the applicability of its *Kurth Ranch* analysis, although not as explicitly as it did with *Austin*. See *Ursery*, 518 U.S. at 282, 135 L. Ed. 2d at 564, 116 S. Ct. at 2144 (stating that tax statutes—such as the tax on marijuana at issue in *Kurth Ranch*—serve purposes quite different from civil penalties). Hence, it would be unwise to apply *Kurth Ranch* to any double jeopardy concerns other than those arising from tax statutes. In construing *Halper*, the Supreme Court stated its opinion was limited to the context of civil penalties. *Ursery*, 518 U.S. at 282, 135 L. Ed. 2d at 564, 116 S. Ct. at 2144. *Halper*, therefore, sets forth the test for whether a civil fine violates the double jeop-

ardy protections of the federal Constitution. The Supreme Court stated:

> "Whether a 'fixed-penalty provision' that seeks to compensate the Government for harm it has suffered is 'so extreme' and 'so divorced' from the penalty's nonpunitive purpose of compensating the Government as to be a punishment may be determined by balancing the Government's harm against the size of the penalty."

*Ursery*, 518 U.S. at 284, 135 L. Ed. 2d at 565, 116 S. Ct. at 2145. It is the above-quoted test that is used to determine whether section 29—48 of the Code violates the double jeopardy clause of the federal Constitution.

■ We hold that charging defendant a $500 fine and towing and storage fees does not constitute punishment for double jeopardy purposes because it is neither "so extreme" nor "so divorced" from section 29—48's nonpunitive purpose of compensating Aurora for the damages done by defendant. We find $500 is a reasonable proxy for the likely actual administrative costs incurred by Aurora in preparing, prosecuting, hearing, and disposing of section 29—48 complaints. Additionally, we find that the $500 sanction is proportionate to the likely combined costs of the section 29—48 administrative proceeding and the societal costs caused by defendants' use of their automobiles to commit one of the predicate offenses. In reaching our conclusion, we have balanced the amount of the civil penalty against the harm suffered by Aurora. See *Ursery*, 518 U.S. at 284, 135 L. Ed. 2d at 565, 116 S. Ct. at 2145. We find that the $500 sanction in combination with the towing and storage fees are not " 'overwhelmingly disproportionate' " to the costs defendant has caused Aurora to incur. See *Ursery*, 518 U.S. at 282, 135 L. Ed. 2d at 564, 116 S. Ct. at 2144, quoting *Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902. Therefore, the fine and fees charged under section 29—48 do not constitute punishment for double jeopardy purposes under the federal Constitution.

■ We note in passing that in the present case defendant's automobile was not forfeited. As such, *Ursery*'s two-step analysis of civil forfeitures under the federal Constitution is inapplicable. See *Ursery*, 518 U.S. at 288, 135 L. Ed. 2d at 568-69, 116 S. Ct. at 2147-48 (a civil forfeiture does not violate the double jeopardy clause unless either: (1) the legislative body intended the forfeiture proceeding to be criminal in nature; or (2) the court is persuaded by the "clearest proof" the proceeding is so punitive in fact that the forfeiture may not be viewed as civil in nature, notwithstanding legislative intent to the contrary). Therefore, we do not address whether an actual forfeiture of an automobile under section 29—48 would violate the double jeopardy clause of the federal Constitution.

■ We next examine the double jeopardy question under the Illinois Constitution. We stress this analysis is based exclusively on our reading of the Illinois constitutional component of *In re P.S.* The first inquiry under *In re P.S.* is whether the civil forfeiture results in punishment. Mere labels, such as "criminal" versus "civil," are insufficient to determine whether a sanction is punishment. *In re P.S.*, 169 Ill. 2d at 279. Along these lines, courts should evaluate the "purposes actually served by the sanction *** not the underlying nature of the proceeding giving rise to the sanction." *In re P.S.*, 169 Ill. 2d at 279. Also, courts may have to evaluate the weight of the sanction against the damage caused by the defendant. This is because a disproportionate sanction bearing " 'no rational relation to the goal of compensating the Government for its loss' " may be indicative of punishment. *In re P.S.*, 169 Ill. 2d at 280, quoting *Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902. In such cases, the government is obliged to provide the defendant with an accounting of the damages and costs involved to determine if the sanction sought constitutes a second punishment. *In re P.S.*, 169 Ill. 2d at 279. After analyzing *Kurth Ranch*, *Austin*, and *Halper*, our supreme court concluded that under both the Illinois and federal Constitutions a sanction serving to even partly punish a defendant is "punishment" for double jeopardy purposes (*In re P.S.*, 169 Ill. 2d at 279-82). The sanction, therefore, must be solely remedial in nature. *In re P.S.*, 169 Ill. 2d at 279.

Before analyzing whether section 29—48 imposes a punishment, we address a tension between one of our pre-*In re P.S.* opinions and that supreme court decision. See *People v. Dvorak*, 276 Ill. App. 3d 544, 550 (1995) (rejecting a solely remedial test and holding that *Kurth Ranch* stands for the proposition a statutory sanction constitutes punishment if it can "be fairly characterized as punitive even though it might have some remedial purpose"). In *Halper* the Supreme Court stated:

> "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment ***. [Citation.] We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Halper*, 490 U.S. at 448-49, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.

Approximately four years later, in the context of the eighth amendment's excessive fines clause (see U.S. Const., amend. VIII),

the Court reaffirmed that a civil sanction is punishment if it serves other than a " '*solely* \*\*\* remedial purpose' " (emphasis in original) (*Austin*, 509 U.S. at 621, 125 L. Ed. 2d at 505, 113 S. Ct. at 2812, quoting *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902). However, less than a year after *Austin*, the Court—in determining a tax statute constituted successive punishment under the double jeopardy clause—concluded the "tax is *fairly characterized* as punishment." (Emphasis added.) *Kurth Ranch*, 511 U.S. at 784, 128 L. Ed. 2d at 781, 114 S. Ct. at 1948. To the extent there is a tension between *Kurth Ranch*—as well as our interpretation of that opinion in *Dvorak*—and our supreme court's *In re P.S.* opinion, we, of course, defer to the Illinois Supreme Court's reading of *Kurth Ranch*.

■ Section 29—48 imposes two types of monetary sanctions: a $500 "penalty" and fees for the towing and storage of the vehicle. See Aurora Code of Ordinances § 29—48(1) (eff. December 21, 1993). It is true the use of the word "penalty" often connotes the idea of punishment. See *Hoffmann v. Clark*, 69 Ill. 2d 402, 429 (1977); see also Black's Law Dictionary 1133 (6th ed. 1990) (penalty "involves idea of punishment, corporeal or pecuniary, or civil or criminal"). However, *In re P.S.* makes it clear that Aurora's decision to label the $500 fee a "penalty" is not dispositive of whether the $500 fine constitutes punishment. We determine that $500 is a reasonable proxy for the likely actual administrative costs incurred by Aurora in preparing, prosecuting, hearing, and disposing of section 29—48 complaints. Additionally, we find that the $500 sanction is proportionate to the likely combined costs of the section 29—48 administrative proceeding and the societal costs caused by defendants' use of their automobiles to commit one of the predicate offenses. Therefore, the fine is rationally related to the goal of compensating Aurora for its losses. As such, the purpose of the $500 fee is purely remedial.

We also find that requiring a defendant to pay the towing and storage expenses incurred by Aurora is purely remedial in nature. Section 29—48(1) of the Code provides for the payment of such costs by a defendant. See Aurora Code of Ordinances § 29—48(1) (eff. December 21, 1993). In towing and storing a defendant's vehicle, Aurora incurs expenses. These expenses will be either borne by Aurora—and, therefore, its taxpayers—or by the defendant. Aurora has done nothing more than decide the party responsible for causing funds to be spent on towing and storage should bear such expense.

We hold that, under the present factual situation, section 29—48 does not impose punishment for double jeopardy purposes. We express no opinion whether an actual forfeiture of defendant's automobile would have constituted punishment for double jeopardy

purposes. Aurora has implicitly made a legislative finding its costs and damages associated with violations of section 29—48 equal $500 plus the costs of towing and storage. See Aurora Code of Ordinances § 29—48(1) (eff. December 21, 1993).

Our holding that section 29—48 does not impose punishment for double jeopardy purposes requires reversal of the trial court. See *In re P.S.*, 169 Ill. 2d at 272-73 (there is a double jeopardy violation only if all three questions are answered affirmatively). We encourage the trial courts to look towards the Illinois Supreme Court's ultimate disposition of *Kimery* on remand from the United States Supreme Court in light of *Ursery*. This disposition should provide guidance concerning whether the protection against double jeopardy differs under the Illinois and federal Constitutions.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McLAREN, P.J., and THOMAS, J., concur.