COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Overton
Argued at Norfolk, Virginia


JOE EDGAR WILSON
                                           OPINION BY
v.        Record No. 1419-95-1    JUDGE NELSON T. OVERTON
                                       NOVEMBER 12, 1996
COMMONWEALTH OF VIRGINIA

        FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
                       COUNTY OF JAMES CITY
                   William L. Person, Jr., Judge

            John D. Konstantinou (McKenna & Konstantinou,
            on brief), for appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.

            Amici Curiae:  Honorable James F. Almand;
            Honorable Joseph V. Gartlan, Jr.; Honorable
            C. Richard Cranwell; Honorable Thomas K.
            Norment, Jr.; Virginia Association of
            Commonwealth's Attorneys; Virginia Sheriffs
            Association (H. Lane Kneedler; Roger C.
            Wiley; Hazel & Thomas, P.C.; Hefty & Wiley,
            on brief), for appellee.



     This appeal poses the question whether the administrative

impoundment of defendant's vehicle pursuant to Code § 46.2-301.1

combined with the later criminal sentence for driving on a

suspended license violates the Double Jeopardy Clause of the

United States Constitution.  We hold that it does not, and we

affirm the conviction.

                              I

     On February 2, 1995, Joe Edgar Wilson was stopped and

charged with driving on a suspended or revoked license in

violation of Code § 46.2-301. On the same day, his vehicle was impounded administratively for thirty days pursuant to Code § 46.2-301.1.[1] On February 8 Wilson received written notice of the impoundment, and he petitioned the general district court for review on February 16. The next day a hearing was held and Wilson's petition to rescind the impoundment was denied. At the end of the administrative impoundment period, Wilson was required to pay approximately $350 in removal and storage costs to the approved private towing company in order to release his vehicle. A date was set for trial on the underlying offense.

Wilson filed a plea of former jeopardy, but the general district court on March 16, 1995, overruled the plea and

---

[1]Code § 46.2-301.1 became effective July 1, 1994. It authorizes the administrative impoundment of a motor vehicle being driven by any person who (i) has had his license suspended or revoked for driving while intoxicated or (ii) has been adjudged as an habitual offender based in whole or in part on an alcohol-related offense.

Upon arrest of such a person driving after his privilege to drive has been suspended or revoked, the arresting law-enforcement officer impounds the vehicle for thirty days. § 46.2-301.1(A). The statute requires notice of the impoundment to be served on the arrested person, and that person may petition the general district court for review of the impoundment. § 46.2-301.1(A-C). The general district court must give this matter precedence over all other matters on the docket. If the person proves by a preponderance of the evidence that the arresting officer did not have probable cause to issue the warrant, the court shall rescind the impoundment. § 46.2-301.1(B). Likewise, any dismissal or acquittal of the underlying charge automatically rescinds the impoundment. § 46.2-301.1(D). In case of rescission, the Commonwealth must pay or reimburse the person for reasonable costs of the impoundment. Otherwise, the costs of impoundment, including removal and storage expenses, must be paid by the offender prior to the vehicle's release. § 46.2-301.1(A).

convicted Wilson of driving on a suspended license. Wilson appealed to the circuit court, renewing his plea of former jeopardy. He argued that the administrative impoundment of his vehicle constituted punishment in a separate proceeding for the same offense, and that therefore a second punishment would place him twice in jeopardy. On June 15, 1995, after a hearing on the issue, the judge overruled his plea. At a trial on June 21, 1995, Wilson was convicted of driving on a suspended license and sentenced to six months in jail and a $200 fine. His license was also revoked for one year. He appeals his conviction.

## II

The United States Constitution provides that no person "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "That is, the Double Jeopardy Clause 'prohibits merely punishing twice or attempting a second time to punish criminally, for the same offence.'" Witte v. United States, 115 S. Ct. 2199, 2204 (1995) (quoting Helvering v. Mitchell, 303 U.S. 391, 399 (1938)). Wilson contends that the administrative impoundment of his vehicle constituted punishment, placing him in jeopardy for the purposes of the Double Jeopardy Clause so as to prohibit the second criminal sanction against him for the same offense.

The Double Jeopardy Clause applies only if an action imposes punishment. Until recently, most courts determined whether a sanction constituted "punishment" by extracting a general

definition of punishment from various Supreme Court cases. The Supreme Court in these cases discussed whether particular sanctions are punishment for the purposes of a particular constitutional protection. See Department of Revenue v. Kurth Ranch, 114 S. Ct. 1937 (1994) (marijuana tax in context of Double Jeopardy); Austin v. United States, 509 U.S. 602 (1993) (civil forfeiture in context of Excessive Fines Clause of Eighth Amendment); United States v. Halper, 490 U.S. 435 (1989) (civil fine in context of double jeopardy). State and federal courts determined whether a sanction constituted punishment only after studying all of the cases and applying elements of each to the case at bar.

Our own recent double jeopardy case anent administrative license suspensions, Tench v. Commonwealth, 21 Va. App. 200, 462 S.E.2d 922 (1995), undertook a similar analysis. Tench examined the goals of the sanction and whether they were remedial or punitive, a "standard" derived from Halper and developed in successive cases. While we recognized that Austin did not concern double jeopardy and did not control, we ultimately rested our decision on teachings from both Halper and Kurth Ranch, holding that "the automatic suspension of Tench's operator's license had a remedial purpose and thus did not constitute punishment under the standard established in Halper and reaffirmed in Kurth Ranch." Id. at 208, 462 S.E.2d at 925.

We were not alone in this understanding. The Court of

Appeals for the Ninth Circuit looked to Kurth Ranch, Austin, and Halper for a definition of punishment in United States v. $405,089.23, 33 F.3d 1210 (9th Cir. 1994). The Ninth Circuit believed that a reading of those cases as a whole formulated "a new test for determining whether a nominally civil sanction constitutes 'punishment' for double jeopardy purposes." $405,089.23, 33 F.3d at 1218-19. The Sixth Circuit adopted a similar rationale in United States v. Ursery, 59 F.3d 568 (6th Cir. 1995).

The Supreme Court reversed both decisions. Ursery v. United States, 116 S. Ct. 2135 (1996). The Court criticized the Courts of Appeals for "misreading" Halper, Austin, and Kurth Ranch. Ursery, 116 S. Ct. at 2144. Ursery effectively limited the discussions of "punishment" outlined in each of those three cases "to the specific contexts of each particular case . . . and often inapplicable to other contexts." Gress v. Board of Parole, No. CA A85110, 1996 WL 492332, at *4 (Ore. Ct. App. Aug. 28, 1996) (explaining application of Ursery to sex offender registrations).

Halper involved a civil penalty. The rule announced in Halper declared that when a civil penalty "bears no rational relationship to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word," then a court must compute the government's damages to determine if the penalty was excessive. Halper, 490 U.S. at 449-50. If the penalty is "so extreme and so divorced

from the Government's damages," then it may constitute punishment.  Id. at 442.  The Court in Ursery limited this rule to the context of this type of sanction because of the unique characteristics of a fixed-penalty provision.  Ursery also limited the holding in Austin, reiterating that "[t]he holding in Austin was limited to the Excessive Fines Clause of the Eighth Amendment, and we decline to import the analysis of Austin into our double jeopardy jurisprudence."  Id. at 2147.  Finally, Kurth Ranch concerned a tax statute, which "serve[s] a purpose quite different from civil penalties, and Halper's method of determining whether the exaction was remedial or punitive 'simply does not work in the case of a tax statute.'"  Kurth Ranch, 114 S. Ct at 1948 (quoting id. at 1950 (Rehnquist, C.J., dissenting)); see Ursery, 116 S. Ct. at 2144.

Unfortunately, not all civil sanctions fit neatly into the categories of monetary civil fines, civil forfeitures, or tax statutes.  Other sanctions imposed may include sex offender registration, administrative license suspensions, and suspensions from program participation.  The administrative vehicle impoundment in the instant case lies within this miscellaneous group.

### III

A temporary impoundment of a vehicle is not a forfeiture, although it has characteristics of a forfeiture.  Being temporarily deprived of one's vehicle until one pays a fee to

release it also resembles a civil penalty.  As such, at first glance neither Halper nor Ursery clearly control this issue.[2]

Justice Stevens, dissenting in Ursery, contended that Halper announced a "general rule for applying the Double Jeopardy Clause to civil proceedings."  Ursery, 116 S. Ct. at 2156 (Stevens, J., dissenting).  Attractive as that approach may be, the majority explicitly rejected it.  Id. at 2145 n.2.  The Court objected to an application of Halper in a forfeiture context on two main grounds:  (1) Halper involved an in personam proceeding rather than an in rem proceeding; and (2) the goals of a fixed-penalty provision differed materially from the goals of a forfeiture. Id. at 2144.

"The narrow focus of Halper followed from the distinction that we have drawn historically between civil forfeiture and civil penalties."  Id.  A civil penalty is an in personam proceeding; a civil forfeiture is an action in rem.  In the former the wrongdoer is punished; in the latter the property is proceeded against, found guilty, and condemned.  Id. at 2145 (citing Various Items of Personal Property v. United States, 282 U.S. 577, 580-81 (1931)).  Thus, the wrongdoer is not subject to a second in personam penalty, and his constitutional rights are not offended.  "[T]he Double Jeopardy Clause applies only to in personam punishments of the wrongdoer and not in rem forfeitures . . . ."  Ursery, 116 S. Ct. at 2150 (Kennedy, J., concurring);

_____

[2]See note 3, infra.

- 7 -

see <u>Various Items</u>, 282 U.S. at 581.

The Court in <u>Ursery</u> also noted that the purposes of the sanction in <u>Halper</u> differed from those in <u>Ursery</u>. <u>Halper</u> involved a fixed-monetary penalty. "Civil penalties are designed as a rough form of 'liquidated damages' for the harms suffered by the Government as a result of a defendant's conduct." <u>Ursery</u>, 116 S. Ct. at 2145; see <u>Rex Trailer Co. v. United States</u>, 350 U.S. 148, 153-54 (1956). Whether the penalty becomes so extreme or so divorced from the nonpunitive goals of the sanction so as to constitute "punishment" may be determined by balancing the government's harm against the civil penalty. <u>Ursery</u>, 116 S. Ct. at 2145. Because the fixed-monetary penalty must be weighed against the government's losses, those losses must be quantified. This methodology does not transfer easily to a civil forfeiture analysis. <u>Ursery</u>, 116 S. Ct. at 2145. "[I]t is virtually impossible to quantify, even approximately, the nonpunitive purposes served by a particular civil forfeiture." <u>Id.</u> Without the ability to quantify the government's losses, as in the case of a civil penalty, the <u>Halper</u> approach founders.

We refuse to apply <u>Halper</u> in the case before us for the same reasons. The administrative impoundment of Wilson's vehicle was an <u>in rem</u> proceeding, not an <u>in personam</u> proceeding. "Actions <u>in personam</u> and actions <u>in rem</u> differ in that the former are directed against specific persons and seek personal judgments, while the latter are directed against the thing or property or

status of a person and seek judgments with respect thereto as against the world." O'Hara v. The Pittson Co., 186 Va. 325, 336, 42 S.E.2d 269, 275 (1947) (quoting 1 C.J.S. Actions § 52). A proceeding against the property and not the owner is "in rem wholly and not in personam. It is not a criminal proceeding. It is a civil case." Quidley v. Commonwealth, 190 Va. 1029, 1036, 59 S.E.2d 52, 56 (1950). Wilson was personally placed in jeopardy and punished only once: at his trial for the offense of driving without a valid license. When his vehicle was administratively impounded, it was the subject of the action, not the driver. From the outset, the in rem character of the impoundment distinguishes this sanction from that in Halper.

Halper's balancing also has no place in this case. Wilson's vehicle was not impounded to compensate the government for harms done, but rather to prevent Wilson from violating the law again and to ensure the safety of the Commonwealth's citizens. We cannot quantify the value of these nonpunitive purposes, nor, for that matter, can we quantify the value of Wilson's deprivation of property for thirty days. Thus, a balancing is impossible.

The Louisiana Court of Appeals encountered this same issue with an administrative license suspension and came to the same conclusion: "In the context of this case, Halper does not apply. It would be impossible to apply a methodology which involves an accounting of the Government's damages and costs to determine whether the suspension of one's driving privileges is remedial or

punitive." State v. Sonnier, 679 So. 2d 1011, 1012 (La. Ct. App. 1996); accord Ex parte Avilez, No. 04-95-00561-CR, 1996 WL 525478 (Tex. Ct. App. Sept. 18, 1996). Likewise, cases of disbarment and suspensions from participation in government programs have applied Ursery's analysis. See United States v. Glymph, 96 F.3d 722 (4th Cir. 1996); United States v. Borjesson, 92 F.3d 954 (9th Cir. 1996). "In the case of . . . a non-monetary sanction, quantification is out of the question. Ursery, not Halper, must guide us." Borjesson, 92 F.3d at 956.

Following the same rationale that led the Supreme Court to the traditional two-part test in United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984), and its forebears, we undertake our Double Jeopardy analysis in the manner of Ursery.[3]

IV

Ursery used a two-part test taken from 89 Firearms. First,

---

[3]Ursery handed down a rule for civil forfeitures only. See Deutschendorf v. People, 920 P.2d 53, 59 (Colo. 1996) (finding Ursery limited to the civil forfeiture context); People v. Ratliff, 669 N.E.2d 122, 126 (Ill. App. Ct. 1996) (same). An administrative vehicle impoundment is not a forfeiture, yet we are confident that the test outlined in Ursery imports well into this area. The Court in Ursery stated that it employed the "two-part test used in 89 Firearms." Ursery, 116 S. Ct. at 2147. This two-part test evolved from a line of Supreme Court cases concerning both civil fines and civil forfeitures. Id. at 2151 (Kennedy, J., concurring). 89 Firearms cites without distinction cases about civil fines for tax evasion, Helvering v. Mitchell, 303 U.S. 391 (1938), civil penalties in a self-incrimination context, United States v. Ward, 448 U.S. 242 (1980), and forfeiture of citizenship in a Sixth Amendment context, Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963). 89 Firearms, 465 U.S. at 362-65. The principles behind the Ursery test, therefore, can be applied appropriately to an administrative impoundment.

the court must decide whether the legislature intended the sanction to be criminal or civil.  Secondly, even if the legislature intended the sanction to be civil, the court must examine whether the sanction is "so punitive in form and effect as to render [it] criminal despite [the legislature's] intent to the contrary."  Ursery, 116 S. Ct. at 2148.

The General Assembly doubtless intended this to be a civil proceeding.  As noted above, the impoundment of Wilson's vehicle was an in rem proceeding.  "[A]ctions in rem have traditionally been viewed as civil proceedings."  Id. at 2147 (quoting 89 Firearms, 465 U.S. at 363).  The action targets the vehicle, not the driver; criminal proceedings are not involved at this stage.

If the object of the action was not sufficient to classify the sanction as civil, other indications exist that the administrative impoundment was created as a civil proceeding. The provisions of the section allow the impoundment of the vehicle through a summary administrative procedure.  The arresting officer, not a judge, impounds the vehicle.  The vehicle is automatically released after thirty days if the owner does not intervene.  Creation of these "distinctly civil procedures" signals a clear intent for the impoundment to be civil rather than criminal.  Id. at 2148; cf. Simmons v. Commonwealth, ___ Va. ___, 475 S.E.2d 806 (1996) (holding that in an administrative license suspension, "[w]hat is involved is neither more nor less than the term administrative suspension

implies, an administrative act, not a judgment by a court of competent jurisdiction"); Nicely v. Commonwealth, __ Va. App. ___, ___ S.E.2d ___ (1996).

The "innocent owner" exceptions under Code § 46.2-301.1(B) do not affect the result without more indication of an intent to punish. See Ursery, 116 S. Ct. at 2149. Similarly, the fact that the impoundment was tied to criminal activity holds no import. See id.; 89 Firearms, 465 U.S. at 365-66. "By itself, the fact that a forfeiture statute has some connection to a criminal violation is far from the 'clearest proof' necessary to show that a proceeding is criminal." Ursery, 116 S. Ct. at 2149. Additionally, Code § 46.2-301.1 does not require the Commonwealth to prove scienter before impounding the vehicle, another characteristic of a civil proceeding. See id.

Under the Ursery framework we next inquire into the actual effect of the sanction. A civil forfeiture may yet be subject to the double jeopardy prohibition if the "clearest proof" indicates that the forfeiture is "so punitive either in form or effect" as to equate to a criminal proceeding. 89 Firearms, 465 U.S. at 365; United States v. Ward, 448 U.S. 242, 248 (1980); see Fleming v. Nestor, 363 U.S. 603, 617 (1960). This standard allows certain punitive effects, as long as important nonpunitive goals are served. Ursery, 116 S. Ct. at 2148.

Nonpunitive goals in the instant case are evident. Wilson had lost his privilege to drive before this incident; he drove

- 12 -

nevertheless.  Relieving him of his vehicle for thirty days served numerous remedial purposes.  Without his vehicle he cannot engage in an activity that he was legally barred from undertaking.  Thirty days without the temptation to drive may force Wilson to change his antisocial lifestyle, which he was required to do the first time his license was suspended and which he apparently did not do.  The remedial purposes of the administrative impoundment far outweigh any incidental punitive effects that may be felt by the defendant.  Cf. Brame v. Commonwealth, ___ Va. ___, 476 S.E.2d 177 (1996) (reaching the same conclusion in the case of an administrative license suspension).  Thus, the sanction is not "so punitive" as to render it criminal.

For the reasons stated, we hold that the administrative impoundment of Wilson's vehicle did not place him in jeopardy for the purposes of the Double Jeopardy Clause.  Accordingly, we affirm his subsequent conviction.

Affirmed.