# CIRCUIT COURT OF FAIRFAX COUNTY

William E. Shoup

 v.

Robert W. Clark

February 28, 2006

Case No. (Chancery) CH-2005-0003579

BY JUDGE STANLEY P. KLEIN

This matter is before the court upon the Motion to Reconsider of Plaintiff William E. Shoup, the Fairfax County Zoning Administrator. Shoup seeks reconsideration of this court's order entered September 23, 2005, in which Shoup's Motion for Entry of a Decree Pro Confesso was granted in part and denied in part. By way of a Decree Pro Confesso, Shoup sought to permanently enjoin Defendant Robert W. Clark and his agents, employees, tenants, lessees, and/or any successors-in-interest from maintaining and/or allowing the maintenance of a junk yard at 5653 Fenwick Drive in Fairfax County. After full consideration of the arguments presented and the relevant authorities and after a subsequent hearing on this matter, this court grants entry of an amended Decree Pro Confesso enjoining the current owner, Robert W. Clark, from maintaining a junk yard on the property and enjoining the use of the property for a junk yard now and at any time in the future.

## I. *Background*

On August 3, 2005, Plaintiff Shoup filed a Bill of Complaint for Declaratory Judgment and Injunctive Relief (Bill of Complaint) solely against Robert W. Clark. Shoup alleged that Clark was in violation of Fairfax County

Zoning Ordinance § 2-302(5) in that Clark was maintaining a junk yard on property zoned for residential use. Shoup asserted that, because Clark failed to timely appeal Shoup's zoning violation determination to the Board of Zoning Appeals and filed no responsive pleadings to the Bill of Complaint, this court should enter a Decree Pro Confesso and grant the injunctive relief sought in the Bill of Complaint. The language of the proposed decree submitted by Shoup stated, in relevant part, the following:

> The Respondent, *his agents, employees, tenants, lessees, and/or any successors-in-interest* are permanently enjoined from maintaining and/or allowing the maintenance of a junk yard on the subject property in violation of Zoning Ordinance § 2-302(5).

Decree Pro Confesso, September 23, 2005, ¶ 4 (emphasis added). This court struck the reference to successors-in-interest and entered the decree. Shoup seeks reconsideration of the decree, arguing that the stricken language may properly be included in this decree and that, upon inclusion of that language, this decree may properly be enforced against persons other than Clark who have or who obtain an interest in the subject property in the future, even though such persons had no notice of these proceedings.

## II. *Analysis*

Under well established Virginia law, a non-party to an injunction action "cannot be brought into contempt for disobeying an order or decree of court, unless it be shown that he had actual notice or knowledge of it prior to the commission of the acts upon which the charge of contempt is based." *Calamos v. Commonwealth*, 184 Va. 397, 400, 35 S.E.2d 397 (1945); *see also Rollins v. Commonwealth*, 211 Va. 438, 441, 177 S.E.2d 639, 642 (1970) (holding that, as the Commonwealth had shown that Rollins had actual notice of the substance of an injunction, he could be held in contempt for violation thereof); *Kidd v. Virginia Safe Deposit & Trust Corp.*, 113 Va. 612, 615, 75 S.E. 145, 146 (1912) (holding that depositors in a bank, who were not parties and had no notice of a proceeding to appoint a receiver to take over the assets of a bank, could not be held in contempt for receiving payment for checks cashed by that bank).

In *Calamos*, for example, the Supreme Court of Virginia reversed the defendant's conviction for contempt for selling alcoholic beverages to an

interdicted person in violation of a court order that enjoined "all persons" from selling alcohol to that person because the defendant did not have actual notice of the order. *Calamos*, 184 Va. at 400, 35 S.E.2d at 398. In *Calamos*, Cecil Pritchett was held to be an "unfit person 'to be allowed to purchase alcoholic beverages' " by the Circuit Court of Spotsylvania County on May 30, 1944. *Id.* at 400, 35 S.E.2d at 400. A copy of the order of interdiction, prohibiting all persons from selling, giving, or furnishing alcoholic beverages to Pritchett, was published once in a newspaper of general circulation in and around Spotsylvania County. An employee of Calamos, the owner of a restaurant, sold alcoholic beverages to Pritchett in violation of the order. *Id.* at 401, 35 S.E.2d at 401. The day after this sale, Pritchett became intoxicated and killed two people, after which he was convicted of murder and sentenced to life imprisonment. *Id.*

A rule was issued directing Calamos to appear and show cause why he should not be fined for contempt. *Id.* In addition to the published order of interdiction against Pritchett, the Commonwealth called witnesses who offered proof that Pritchett had a bad reputation with respect to his use of intoxicating liquors, "that he was given to excessive drinking, and that when intoxicated he often became violent." *Id.* In addition, it was shown that Calamos had been provided a list of interdicted persons by the Sheriff of the County, though it was provided before Pritchett was on the list, and that the Sheriff had told Calamos to watch the newspaper for additions to the list. *Id.* at 402, 35 S.E.2d at 401. Calamos testified that he did not see the order of interdiction against Pritchett and that he had not heard about it before the institution of the contempt proceedings. *Id.* He also testified that, although he had known Pritchett for a number of years, he had not seen him in two years and that, on the day in question, "Pritchett was well dressed, well behaved, and showed no signs of being under the influence of liquor." *Id.* at 402, 35 S.E.2d at 401. Calamos' employee testified that he neither knew personally nor knew of Pritchett or that Pritchett had been interdicted. *Id.* Nonetheless, Calamos was found guilty of contempt.

On appeal, the Commonwealth conceded that there was no evidence that either Calamos or his employee had either actual notice or knowledge of the order of interdiction. "But [the Commonwealth] insisted that, by reason of the publication of the order of interdiction, notice or knowledge of it was 'imputed' to Calamos, and that he [could not] escape such imputation by saying that he did not read the local newspaper and failed to see the publication." *Id.* at 403, 35 S.E.2d at 401. The Supreme Court of Virginia disagreed with the Commonwealth's position, citing numerous cases in courts

throughout the country, all of which, having held that one charged with contempt is "entitled to the benefit of the `presumption of innocence' . . . which arises alike in respect of notice and conduct as `an instrument of proof created in his favor'." *Id.* at 404-05, 35 S.E.2d at 398-99 (citations omitted). The Court observed that:

> If the contention of the Commonwealth be sound, then every order of interdiction entered by any court of competent jurisdiction in the State would be binding on every salesman in every State store, as well as on every person licensed to dispense alcoholic beverages, wherever he may be located and irrespective of whether he may have had actual notice of such order.

*Id.* at 406, 35 S.E.2d at 397. Finding that Calamos and his employee had no knowledge or notice of the order of interdiction nor any reason to believe that Pritchett had been interdicted, the Supreme Court reversed the trial court and dismissed the contempt charge against Calamos.

However, the *Calamos* Court, in dicta, acknowledged the existence of an exception to the rule requiring proof of actual notice in cases where the injunction operates *in rem* against an illegal use of specific real property rather than *in personam*. "This exception is based on the theory that the injunction decree `is an encumbrance which runs with the land, of which everybody must take notice'." *Calamos*, 184 Va. at 404, 35 S.E.2d at 397, *citing State v. Cline*, 151 Kan. 764, 100 P.2d 637 (1940) (citations omitted). Thus, the issue before this court is whether Shoup's proffered language would create an *in personam* injunction or an *in rem* injunction and how, if at all, this injunction may be enforced against persons other than Clark who have or who later obtain an interest in the subject property.

"Actions *in personam* and actions *in rem* differ in that the former are directed against specific persons and seek personal judgments, while the latter are directed against the thing or property or status of a person and seek judgments with respect thereto as against the world." *Wilson v. Commonwealth*, 23 Va. App. 443, 450, 477 S.E.2d 765 (1996). "An action is *in personam* when its object is to obtain a personal judgment against the defendant, upon which a general execution may be awarded directing the collection of the judgment out of *any property* of the defendant anywhere to be found. It is *in rem* when it seeks to affect *particular portions of his*

*property* only." *O'Hara v. The Pittston Co.*, 186 Va. 325, 336, 42 S.E.2d 269 (1947) (emphasis added).

The fact that property, real or personal, is the subject of the action, either in whole or in part, does not, however, necessarily render an action *in rem. See O'Hara v. The Pittston Co.*, 186 Va. 325, 42 S.E.2d 269 (1947). Indeed, the plaintiffs in *O'Hara* were a group of dissenting shareholders in a corporation involved in a merger. *Id.* at 328, 42 S.E.2d at 271. Plaintiffs claimed they were not made parties to an appraisal proceeding initiated against other dissenting shareholders and, thus, that the valuation for dissenter shares, as determined by the court in the appraisal proceeding, was not binding upon them. *Id.* Defendants countered that the appraisal proceeding was an action *in rem*, seeking to establish a uniform valuation of all dissenter shares at a specified point in time and, thus, the valuation fixed by the court was *res judicata* as to this group of dissenters. *Id.* at 336, 42 S.E.2d at 275. The Supreme Court of Virginia disagreed. *Id.* The Court looked to the language of the statute and found that it clearly contemplated an action *in personam* as it sought a determination of the value of stock belonging to "such shareholder." *Id.* at 336-41, 42 S.E.2d at 275-78. In addition, the determination of value was final and conclusive solely "upon all parties to the proceeding." *Id.* In light of the plain language of the statute and because the appraisal proceeding was essentially litigated as an *in personam* action, the Court held that the appraisal valuation was not binding on the dissenting shareholders who had not been made parties to the proceeding. *Id.* at 342, 42 S.E.2d at 278.

It is worthwhile to note that the *O'Hara* defendants argued that the plaintiff shareholders had actual notice of the proceedings and thus should be bound thereby as they failed to properly intervene. The Supreme Court was unmoved by this argument, however, and opined that the plaintiff dissenters had no relationship to the other shareholders who were made parties to the appraisal proceeding that would have required the dissenters to have intervened in order to protect their interests. *Id.* at 344, 42 S.E.2d at 279.

Despite the potential difficulty in determining whether an action is one *in rem* or *in personam*, the distinction is critical to determining who is bound by a court order. For example, in *Wilson v. Commonwealth*, the Court of Appeals considered whether the impoundment of the vehicle of a defendant convicted of driving on a suspended or revoked license, combined with his later criminal sentence for the same offense, violated the Double Jeopardy Clause of the Constitution. *Wilson v. Commonwealth*, 23 Va. App. 443, 445, 477 S.E.2d 765, 766 (1996). Wilson was stopped and charged with driving on a suspended or revoked license in violation of Virginia Code § 46.2-301. *Id.*

On the same day, Wilson's vehicle was impounded administratively pursuant to Virginia Code § 46.2-301.1. *Id.* Wilson unsuccessfully appealed the impoundment and was required to pay $350.00 at the end of the impoundment period to secure the release of his vehicle. *Id.* at 446, 377 S.E.2d at 767. After Wilson's trial date was set on the criminal charge, he filed a plea of former jeopardy, arguing that "the administrative impoundment of his vehicle constituted punishment in a separate proceeding for the same offense, and that, therefore, a second punishment would place him twice in jeopardy." *Id.* Wilson's plea was overruled and he was ultimately found guilty of the criminal offense and sentenced, *inter alia*, to a monetary fine. *Id.*

On appeal, the Court of Appeals, applying the analysis of a string of United States Supreme Court precedents, opined that the administrative impoundment of Wilson's vehicle did not constitute a "punishment" as it was an *in rem* proceeding, not an *in personam* proceeding. *Id.* at 450, 477 S.E.2d at 768. The Court opined that:

> Wilson was *personally* placed in jeopardy and punished only once: at his trial for the offense of driving without a valid license. When his vehicle was administratively impounded, *it* was *the subject of the action*, not the driver.

*Id.* at 451, 477 S.E.2d at 769 (emphasis added).

In the instant case, Shoup asserts that the court can properly enter a decree that has both an *in personam* and an *in rem* effect, based on the dicta in *Calamos*. However, the language proposed by Shoup is clearly directed at Clark and parties associated with him and thus constitutes an action *in personam* only. This court is willing to enter an *in rem* injunction against future use of the subject property in contravention of the relevant provisions of the Fairfax County Zoning Ordinance. Furthermore, this court is fully able to enter an *in personam* injunction against Clark, as he is a party defendant to these proceedings. However, this court is unwilling to blur beyond recognition the legal distinction between an *in rem* injunction and an *in personam* injunction, as requested by Shoup, as fundamental notions of due process require that a person have notice of proceedings before an *in personam* injunction may be entered against him.

This court will, therefore, enter an *in personam* injunction against Clark and an *in rem* injunction against any future illegal use of the subject property. In fact, this *in rem* injunction meets Shoup's needs as it enjoins anyone from using the subject property in a manner inconsistent with the relevant

provisions of the County's Zoning Ordinance. Upon legal notice of the existence of this *in rem* injunction being given to any person in the future, subsequent acts of any such person(s) in contravention of the injunction will be punishable by contempt.

## III. *Conclusion*

For the reasons set out herein, this court denies the County's Motion to Reconsider and enters an Amended Decree Pro Confesso which enjoins Clark from maintaining and/or allowing the maintenance of a junk yard on the subject property and which permanently enjoins the maintenance of a junk yard on the subject property at any time in the future.