THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. KENNETH JAUDON, Defendant-Appellee (The City of Chicago, Plaintiff-Appellant).—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. CHIANTHONY LEE, Defendant-Appellee (The City of Chicago, Plaintiff-Appellant).—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. JEREMIAH CATES, Defendant-Appellee (The City of Chicago, Plaintiff-Appellant).—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. JESSIE COACH, Defendant-Appellee (The City of Chicago, Plaintiff-Appellant).

First District (2nd Division)   Nos. 1—97—0046, 1—97—1125, 1—97—1192, 1—97—1193, 1—97—1748, 1—97—1776, 1—97—1777, 1—97—1914 cons.

Opinion filed September 7, 1999.

Brian L. Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellant.

Thomas Peters and Michael Norris, both of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

The respective defendants in these consolidated actions, Kenneth Jaudon, Chianthony Lee, Jeremiah Cates and Jessie Coach (collectively defendants), were arrested and charged in separate criminal cases with various weapons-related violations of state law and with various weapons or traffic violations of the ordinances of the City of Chicago (City). At the time of the defendants' respective arrests, the City seized and impounded the vehicles the defendants were driving and in which the illegal weapons were found. Impoundment notices were served at that time. Shortly thereafter, at the probable cause hearings held on the state charges, the respective judges issued orders directing the City to release the impounded vehicles. The City moved to vacate the release orders arguing lack of notice and lack of subject matter jurisdiction. The trial courts denied or struck each motion to vacate and subsequently held the City's law department and the City's then

corporation counsel, Susan Sher; deputy corporation counsel, Norma Reyes; and Thomas Dumbai, chief assistant corporation counsel, individually, in contempt for refusing to return defendant Coach's car and, later, his cash bond, to him. The City appeals from the release orders pursuant to Supreme Court Rule 307(a)(1) (166 Ill. 2d R. 307(a)(1)) upon the uncontested assertions that the release orders constitute mandatory injunctions, and it appeals the contempt judgment rendered in the Coach case pursuant to Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)).[1]

The issues on appeal are: (1) whether the home rule municipal ordinance was constitutional; (2) whether the trial courts lacked authority to order release of the vehicles seized pursuant to that municipal ordinance; (3) whether the trial courts lacked subject matter jurisdiction to order release of the vehicles because there was no exhaustion of the City's administrative adjudication process; and (4) whether the civil contempt judgment was void. The City alternatively argues that, even if not void, the civil contempt judgment should be vacated because the City's refusal to comply with the court's release order was made in good faith to secure appellate review of the propriety of the release orders. Finally, the City argues, alternatively, that the portion of the fine imposed retroactively should be vacated because it was punitive in nature and was imposed without affording the contemnors certain procedural rights. For the reasons discussed below, we vacate the circuit court orders directing the City to release the impounded vehicles without payment of fines or fees and the orders refusing to vacate the release orders and we reverse the judgment of contempt.[2]

## BACKGROUND FACTS

In order to better understand the facts of this case, we first explain the impoundment ordinance that is the subject of the instant appeal. Section 8—20—015 of the Municipal Code of Chicago (the Municipal

---

[1]Although the City claims we have jurisdiction to hear the contempt judgment pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301), we believe that jurisdiction is premised on Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)).

[2]The only appellee to appear and file an appellee's brief is defendant Jesse Coach. While we can decide the matter as to the other appellees even though they have not filed briefs in the matter (see, e.g., First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 345 N.E.2d 493 (1976)), several of the arguments made by Coach apply to all the defendants, and, as such, we will attribute Coach's arguments to all the defendants/appellees to the extent applicable.

Code) (Chicago Municipal Code § 8—20—015 (amended July 10, 1996)) allows for the seizure and impoundment of any motor vehicle that contains an unregistered firearm or a firearm that is not broken down in a nonfunctioning state. Subsection (a) of that provision imposes on the owner of record of the vehicle a $500 fine plus towing costs ($125) and storage fees. The only defenses or exceptions that the owner may raise are: (1) the vehicle used in the unlawful firearm violation was stolen and the theft was reported to the appropriate police authorities within 24 hours after the theft was discovered; (2) the vehicle was operating as a common carrier and the violation occurred without the knowledge of the person in control of the vehicle; or (3) the presence of the firearm was permissible pursuant to paragraphs (1) through (10) of section 8—20—010 of the Municipal Code or, in the case of an unregistered firearm, the firearm was exempt from registration under section 8—20—040 of the Municipal Code. Chicago Municipal Code § 8—20—015(a) (amended July 10, 1996).

Subsection (b) of section 8—20—015 (Chicago Municipal Code § 8—20—015(b) (amended July 10, 1996)) provides in pertinent part:

> "Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents."

That subsection requires the police officer to notify any person claiming to be the owner or any person found to be in control of the vehicle at the time of the alleged violation of the seizure and the vehicle owner's right to request a vehicle impoundment hearing. Chicago Municipal Code § 8—20—015(b) (amended July 10, 1996). If within 12 hours of impoundment the owner requests such a hearing, a City hearing officer must conduct a preliminary administrative impoundment hearing within 24 hours of impoundment, excluding Sundays and holidays. If the officer determines there was probable cause to believe the vehicle was subject to seizure, impoundment continues unless the owner posts a cash bond in the amount of $500 plus any applicable towing and storage fees. Chicago Municipal Code § 8—20—015(c) (amended July 10, 1996).[3] The hearing officer must then hold a final administrative impoundment hearing within 30 days of seizure

---

[3]Although not discussed by the parties, section 8—20—015 was amended on April 29, 1998, whereby subsections (c), (d), (e), and (f) were deleted. A new subsection (c) was added stating that the provisions of section 2—14—132 of the Municipal Code would apply to seizures of impounded motor vehicles. Chicago Municipal Code § 8—20—015(c) (amended April 29, 1998). Subsection (b) of section 8—20—015 was amended to provide that vehicle impoundment hearings would be conducted under section 2—14—132 of the

to determine whether, by a preponderance of the evidence, the vehicle contained the unregistered firearm or functioning firearm and whether any of the ordinance exceptions existed. If the hearing officer finds that the vehicle contained the firearm contraband and that none of the exceptions applied, he is required to enter an order finding the owner of record civilly liable to the City for the amount of the fine, towing costs and storage fees. Otherwise, the hearing officer must order the immediate return of the owner's vehicle or the cash bond. Chicago City Council Journal of Proceedings § 8—20—015(d), at 25034 (July 10, 1996). If the owner cannot pay the fine, the City is empowered to sell the vehicle to satisfy the debt. Chicago City Council Journal of Proceedings § 8—20—015(e), at 25035 (July 10, 1996).

Defendant Coach, the owner of the impounded vehicle involved in the commission of his weapons-related offenses, was arrested on April 14, 1997. He requested an administrative probable cause hearing with respect to the impounded vehicle. At the preliminary impoundment hearing, held on April 16, 1997, the City hearing officer found probable cause for continued impoundment of the vehicle.

With respect to the criminal charges filed against Coach, which proceeded simultaneously, the circuit court judge sitting in the criminal division found no probable cause to detain Coach on the state felony charge of unlawful use of a weapon (720 ILCS 5/24—1(a)(4) (West 1996)). At that hearing, held on April 15, 1997, the court dismissed the State charge as well as the City's charge of driving without head lamps (Chicago Municipal Code § 9—76—050(b) (1990)). On April 16, 1997, at a hearing held in the City's absence, the circuit court judge entered an order directing the City to release Coach's impounded vehicle without payment of fees or costs. It is undisputed that no motion had been filed in the circuit court seeking that release and that the City had not been provided with notice or opportunity to

Municipal Code. Chicago Municipal § 8—20—015(b) (amended April 29, 1998). Chapter 2—14 of the Municipal Code creates a department of administrative hearings to conduct administrative adjudication proceedings for departments and agencies of the City and establishes procedures for that department. See Chicago Municipal Code § 2—14—010 et seq. (amended April 29, 1998). Section 2—14—132 establishes administrative proceedings for vehicles seized and impounded pursuant to various listed City ordinances including section 8—20—015. Chicago Municipal Code § 2—14—132 (added April 29, 1998). It, inter alia, increased the time limits relative to the preliminary and final administrative hearings. Although we cite to section 8—20—015 in its pre-April 29, 1998, amendment state, it is clear that the circuit courts failed to enforce either version of section 8—20—015 of the Municipal Code.

be heard on the impoundment issue. It also is undisputed that a copy of the release order was left on the chair of an assistant corporation counsel assigned to a nearby courtroom. On the afternoon of April 16, 1997, Coach appeared at the Chicago department of revenue's vehicle impoundment office with a copy of the court's release order. City employees at the impoundment office refused to release the car at that time without payment of the bond.

On April 17, 1997, the City filed a motion to vacate the April 16, 1997, release order, arguing lack of notice and lack of subject matter jurisdiction. Also on April 17, 1997, Coach secured the release of his vehicle by posting a cash bond in accordance with the municipal ordinance. On May 2, 1997, the court struck the City's motion to vacate, stating, "The City has made no effort to comply with the order entered by this Court and is therefore denied standing to move for the vacation of this order." The court also entered a rule to show cause directing the corporation counsel, her deputy and chief assistant to show why they should not be held in contempt for failing to comply with the court's April 16, 1997, release order and "other like orders" (which the court subsequently explained to be orders in other like cases entered within the previous six months).

On May 9, 1997, the court entered an order of contempt against the City and its corporation counsel based on the City's failure to comply with the court's April 16, 1997, order relative to Coach and with orders in "like" cases dated April 11, 1997; April 22, 1997; April 28, 1997; April 30, 1997; and May 7, 1997. As to defendant Coach, the court found the City refused to release Coach's car without bond, refused to comply with the Coach release order, advised City employees not to comply with the court's order, and filed motions to vacate. The court assessed a daily fine of $500 against each respondent beginning April 25, 1997, and continuing every day thereafter against each respondent until the contempt was purged by the return of Coach's cash bond to him.[4]

Defendants Lee and Cates were not the owners of the vehicles involved in the commissions of their firearm-related offenses. Those vehicles were owned by Lee's father and Cates' mother, respectively. With respect to Jaudon, there is strong support for the conclusion that Jaudon co-owned the vehicle with his grandmother.[5] No administrative probable cause hearings were requested or held with respect to

[4]By orders of this court, the release order as to Coach's vehicle and the judgment of contempt and daily fine have been stayed.

[5]At a hearing held on January 2, 1997, relative to the criminal charges pending against Jaudon, both Jaudon and his grandmother indicated to court

the impoundment of those vehicles. Unlike the facts in the Coach case, the circuit court judges found probable cause to detain Jaudon, Lee and Cates but, upon oral motion, ordered the return the impounded vehicles to their respective owners without payment of fees or costs by those vehicle owners. In the Jaudon proceedings, as in the Coach case, the City was not provided notice of the oral request by the defendant to the trial court for the return of the impounded vehicle, and counsel for the City was not present when the circuit court ordered the release of the vehicle. In the Lee and Cates proceedings, the circuit court judge abruptly summoned an assistant corporation counsel to appear before it at which time the court entered the release orders for the impounded vehicles. In the latter proceedings, the judge rejected the City's objection of lack of adequate notice and refused to give the City any opportunity to respond in writing to the requests for the release of those vehicles.

The City filed motions to vacate the various release orders, and those motions were denied. The vehicles impounded in the Lee and Jaudon cases were subsequently released pursuant to the circuit court release orders by the City to their respective owners without the posting of bonds.[6] Pursuant to the City's motion, this court stayed the release order entered by the circuit court in the Cates case.

## DISCUSSION

■ On appeal, the City argues that the circuit court orders requiring release of the impounded vehicles were erroneous because they ignored the City's home-rule ordinance allowing for seizure and impoundment of vehicles. Before we can address this issue, we must first consider Coach's argument that the municipal ordinance allowing for impoundment was unconstitutional. We note, however, that this argument was not raised by any of the parties below nor expressly ruled upon by the circuit court. Generally, an appellee may raise any argument or basis supported by the record to show the correctness of

that the vehicle "belong[ed]" to Jaudon's grandmother. At the preliminary hearing held on February 21, 1997, defense counsel expressed a belief the vehicle belonged to the grandmother while counsel for the City stated that information from the Secretary of State indicated both individuals were the owners. The impoundment order issued after the final administrative hearing lists Jaudon and his grandmother as respondents. While, as will be discussed later, Jaudon's ownership of the vehicle will implicate certain constitutional considerations, it will not in any event alter the ultimate disposition of this appeal.

[6]The Lee and Jaudon appeals are not moot, however, because the City maintains its right to collect fines and fees from the vehicle owners.

the judgment even though such argument was not previously advanced if the facts alleged in support of this contention were before the trial court. *E.g., Shaw v. Lorenz*, 42 Ill. 2d 246, 248, 246 N.E.2d 285, 287 (1969); *Hickey v. Illinois Central R.R. Co.*, 35 Ill. 2d 427, 439-40, 220 N.E.2d 415, 421 (1966); *Dow v. Columbus-Cabrini Medical Center*, 274 Ill. App. 3d 653, 655, 655 N.E.2d 1, 3 (1995); *Harris Trust & Savings Bank v. Joanna-Western Mills Co.*, 53 Ill. App. 3d 542, 554, 368 N.E.2d 629, 638 (1977); *In re Estate of Waitkevich*, 25 Ill. App. 3d 513, 518, 323 N.E.2d 545, 549 (1975). But see *Jensen Disposal Co. v. Town of Warren*, 218 Ill. App. 3d 483, 486-87, 578 N.E.2d 605, 607 (1991). Moreover, this court can address an issue not raised in the trial court because the waiver rule is a limitation on the parties, not on the jurisdiction of the courts. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11, 672 N.E.2d 1178, 1183 (1996). As stated in *Edgar*:

> "[A] reviewing court may consider an issue not raised in the trial court if the issue is one of law and is fully briefed and argued by the parties. [Citations.] *** Furthermore, the questions presented are of substantial public importance, and we believe the public interest favors consideration of the merits." *Edgar*, 174 Ill. 2d at 11-12, 672 N.E.2d at 1183 (considering appellant's constitutional issue not raised in trial court).

Here, the question of the constitutionality of section 8—20—015 of the Municipal Code of Chicago was sufficiently briefed by Coach in his appellee's brief and by the City in its reply brief. Furthermore, as in *Edgar*, the constitutionality of the City's ordinance involves an area of strong public interest insofar as it concerns a municipality's power to regulate the possession of firearms on the public streets.

## I. Constitutionality of Municipal Ordinance

The defendants contend that section 8—20—015 of the Municipal Code is unconstitutional because it violates the substantive due process requirements of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2 (1970)) and the excessive fines clause and double jeopardy clause of the United States Constitution (U.S. Const., amend. VIII (excessive fines); U.S. Const., amend V (double jeopardy)).

### A. Substantive Due Process

■ As to their first contention, the defendants argue that the ordinance violates traditional notions of due process because it precludes as a defense the innocence of third-party vehicle owners. Initially we note that none of the defendants would have standing to raise this constitutional argument since none of them were innocent vehicle owners. A party does not have standing to assert the

constitutional rights of others not before the court. *People v. Laughlin*, 293 Ill. App. 3d 194, 687 N.E.2d 1162 (1997); see *Northern State Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 649 N.E.2d 384 (1995) (plaintiffs cannot assert a constitutional right where their rights have not been impeded); *Rodgers v. Whitley*, 282 Ill. App. 3d 741, 668 N.E.2d 1023 (1996) (in order to have standing to challenge a statute, a party must be within the class of people as to whom the statute is allegedly unconstitutional). Lee and Cates could not assert the rights of vehicle owners because they did not own the vehicles that were impounded at the time of their respective arrests. Coach, as the owner of an impounded vehicle, and Jaudon, to the extent that he owned an impounded vehicle,[7] would not fall into the class of wholly innocent owners because there was no denial of the fact that illegal weapons were found in their respective vehicles. While Coach was exonerated of the state weapons charge, on a finding of no probable cause based upon the State's failure to establish whether he or a passenger possessed the weapon, there was no negation of the fact that his vehicle contained and transported the weapon. With respect to Jaudon, probable cause on the substantive offense of unlawful possession was established. Thus, in either event, the defendants in this case would not fall within the class of persons to whom the municipal ordinance was alleged to have been unconstitutional based upon contentions of lack of substantive due process.

However, even if we were to reach this substantive due process argument, we would reject it. Legislation does not violate substantive due process protections if it bears a rational relationship to a legitimate governmental purpose and is neither arbitrary nor discriminatory. *Town of Normal v. Seven Kegs*, 234 Ill. App. 3d 715, 720, 599 N.E.2d 1384, 1387 (1992). "A rational relationship exists if the challenged legislation, to some degree, tends to prevent some offense or evil or to preserve public health, morals, safety and welfare." *Seven Kegs*, 234 Ill. App. 3d at 720, 599 N.E.2d at 1388.

Here, it cannot be disputed that the regulation of firearms possession and transportation is a legitimate governmental interest. See *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 470 N.E.2d 266 (1984). A rational relationship exists with that legitimate goal even where innocent owners are the subject of the legislation because it "may have the desirable effect of inducing [innocent owners] to exercise greater care in transferring possession of their property." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 688, 40 L. Ed. 2d 452, 471, 94 S. Ct. 2080, 2094 (1974). Such a conclusion was

---

[7]See *supra* note 5.

recently reached by the Seventh Circuit Court of Appeals in *Towers v. City of Chicago*, 173 F.3d 619 (7th Cir. 1999). *Towers* rejected a substantive due process attack of section 8—20—015 of the Municipal Code[8] by two innocent owners, stating:

> "The plaintiffs [the vehicle owners] had the sole authority to decide to whom their vehicles would be lent and to set the restrictions and checks that were appropriate to ensure that the vehicle would not be used to support illegal conduct." *Towers*, 173 F.3d at 627.

In reaching this conclusion, the court relied heavily upon the United States Supreme Court decision in *Bennis v. Michigan*, 516 U.S. 442, 134 L. Ed. 2d 68, 116 S. Ct. 994 (1996). *Bennis* involved a state civil forfeiture action against a car wherein an illegal sexual act had occurred. The husband and co-owner of the car was a participant in the illegal activity; his wife, with whom he owned the car, was not a participant. The wife argued that the forfeiture of her interest in the car violated the due process clause of the federal constitution. The *Bennis* court found no substantive due process bar even where the owner did not know that the vehicle would be used for criminal activity. The *Towers* court refused to distinguish *Bennis* on the ground, propounded also by the defendants in the case at bar, that the *Bennis* statute allowed for forfeiture, an *in rem* result, whereas the statute in *Towers* (also the statute in the instant case) allowed for the imposition of fines, an *in personam* obligation. Finding that distinction to be one of form but not substance, the *Towers* remained steadfast in its reliance on *Bennis*, finding that the proceedings in both cases resulted in economic penalty to the owner of property used improperly and served the same governmental purpose of deterring unlawful conduct. *Towers*, 173 F.3d at 626-27.

We agree with the analysis in *Towers* and find that section 8—20—015 of the Chicago Municipal Code does not violate the substantive due process requirements of the federal and state constitutions. As reasoned in *Towers*, to the extent the owners of the impounded vehicles have lent their vehicles to persons who then engaged in criminal activity, they bear some responsibility for that usage and are, therefore, not truly innocent. Further support for this conclusion can be found in *Seven Kegs*, 234 Ill. App. 3d 715, 599 N.E.2d 1384, which relied on *Calero-Toledo*, 416 U.S. 663, 40 L. Ed. 2d 452, 94 S. Ct. 2080.

---

[8]*Towers* dealt with the constitutionality of two Chicago ordinances: section 7—24—225 and section 8—20—015 (Chicago Municipal Code §§ 7—24—225, 8—20—015 (amended April 29, 1998)) which allowed for the imposition of administrative penalties of $500 upon owners of vehicles containing illegal drugs (section 7—24—225) or unregistered or functioning firearms (section 8—20—015).

The court in *Seven Kegs* held that the application of a forfeiture statute to an innocent owner was constitutional because it could have the desirable effect of inducing the innocent owner to exercise restraint in "select[ing] to whom he shall entrust his property, to establish safeguards to ensure the safe return of this property and to see his property is used in accordance with the law." *Seven Kegs*, 234 Ill. App. 3d at 721, 599 N.E.2d at 1388, citing *Calero-Toledo*, 416 U.S. at 688, 40 L. Ed. 2d at 471, 94 S. Ct. at 2094. We agree that while innocence may raise a constitutional question, it will not be an operative constitutional deficiency where, as here, there is direct privity between the owner and the wrongdoer. When privity is absent, such as when the vehicle has been stolen or when the vehicle is operated as a common carrier (Chicago Municipal Code § 8—20—015(a) (amended July 10, 1996)), there is no liability. Only those vehicle owners who have the opportunity to exercise care in the transfer of their vehicles are liable under the Chicago impoundment ordinance.[9]

### B. Excessive Fine

■ We also would reject defendants' second constitutional contention, even if they had standing to raise it, that the vehicle impoundment ordinance violates the excessive fines clause of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII).

---

[9]In the context of his substantive due process contention, Coach briefly asserts what appears to be a procedural due process contention. He attacks the ordinance contending that it allows at the preliminary impoundment hearing use of hearsay evidence and evidence suppressed in criminal proceedings and because it does not provide a right to compel attendance of witnesses. See Chicago Municipal Code § 8—20—015(c) (amended July 10, 1996). While Coach and Jaudon, to the extent they are vehicle owners, would have standing to raise this argument, they have waived it by failing to support it with detailed explanation and case authority. See 177 Ill. 2d R. 341(e)(7) ("Argument *** shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities"); *Eckiss v. McVaigh*, 261 Ill. App. 3d 778, 634 N.E.2d 476 (1994); see also *Edgar*, 174 Ill. 2d at 11 (argument not presented to trial court will be considered if fully briefed and argued on appeal). We also note that, as discussed in note 4 *supra*, subsection (c) of section 8—20—015 was deleted by amendment dated April 29, 1998. The procedures for administrative impoundment hearings are now governed by section 2—14—132 of the Chicago Municipal Code, and that provision does not expressly permit the use of hearsay. Chicago Municipal Code § 2—14—132 (added April 29, 1998). Moreover, sections 2—14—040(5), 2—14—076(f), and 2—14—080(a) of the Municipal Code give administrative hearing officers the power to subpoena necessary witnesses. Chicago Municipal Code § § 2—14—040(5), 2—14—076(f), 2—14—080(a) (amended April 29, 1998).

This rejection also is premised on *Towers*. There, as here, the vehicle owners contended that the fine imposed by section 8—20—015 was excessive because it bore no relationship to the vehicle owner's culpability or level of wrongdoing. In concluding that the ordinance did not violate the excessive fines clause, the *Towers* court relied on factors considered in *United States v. Bajakajian*, 524 U.S. 321, 141 L. Ed. 2d 314, 118 S. Ct. 2028 (1998), a case in which the defendant appealed from the forfeiture of $357,144 in currency that he failed to report when transporting that currency, lawfully obtained, out of the country. *Towers*, 173 F.3d at 624-26; see 18 U.S.C. § 982(a)(1) (1994) (federal forfeiture statute applied in *Bajakajian*). In finding the forfeiture provision violated the excessive fines clause of the United States Constitution, the *Bajakajian* court applied a test of gross disproportionality between the forfeiture and the gravity of the defendant's offense. *Bajakajian*, 524 U.S. at 340-41, 141 L. Ed. 2d at 333, 118 S. Ct. at 2039. It concluded that the forfeiture of $357,411 in United States currency was grossly disproportionate considering the following factors relative to the defendant's offense: the defendant was guilty of only a reporting offense; the violation was unrelated to any other illegal activities (such as drug dealing, money laundering, or tax evasion); the maximum criminal sentence would have been six months and the maximum fine $5,000; and the offense caused only minimal harm. *Bajakajian*, 524 U.S. at 327-28, 141 L. Ed. 2d at 331-32, 118 S. Ct. at 2038-39.

Applying the *Bajakajian* test to the $500 fine imposed by section 8—20—015 of the Municipal Code, the *Towers* court found the fine not excessive. Although the court noted that the gravity of the offense was minimal, given the lack of evidence that the vehicle owners were themselves involved in any illegal activity, it nonetheless found that the vehicle owners were culpable because they consented to the use of their vehicles and failed to ensure that individuals having access to the vehicles would not place illegal items therein. The court also found that the vehicle owners caused harm to society by "contribut[ing], however unwittingly, to *** the use of firearms." *Towers*, 173 F.3d at 625. Finally, the court compared the amount of the fine to the gravity of the vehicle owners' offense, finding it not disproportionate to the gravity of the conduct. In that regard, the court stated:

> "Five hundred dollars is not a trifling sum. But the City, in fixing the amount, was entitled to take into consideration that the ordinances must perform a deterrent function—to induce vehicle owners to ask borrowers hard questions about the uses to which the vehicle would be put or to refrain from lending the vehicle whenever the owner has a misgiving about the items that might find a

temporary home in that vehicle. The $500 fine imposed in this case is large enough to function as a deterrent, but it is not so large as to be grossly out of proportion to the activity that the City is seeking to deter." *Towers*, 173 F.3d at 626.

We agree with the *Towers* court's reasoning and conclusion that the $500 fine imposed upon the owners of vehicles who lend their vehicles to individuals who place unlawful weapons within the vehicles is not grossly disproportionate to the offenses committed. We note, particularly with respect to Coach and to Jaudon, if Jaudon had an ownership interest, that the fines were even more proportionate to the level of wrongdoing since Coach and Jaudon, unlike the plaintiffs/ owners in *Towers* and unlike the vehicle owners whose cars were driven by defendants Lee and Cates in the instant case, were not innocent. They were the drivers of the vehicles and knew of the presence of the illegal contraband.

## C. Double Jeopardy

Coach, as the criminal defendant and owner of the impounded vehicle, next contends that the bar of double jeopardy required the circuit court to order the return of his vehicle to him without the payment of the fine and towing and storage costs. He contends that permitting the impoundment proceedings to go forward, after the circuit court found a lack of probable cause on the state charges of unlawful use of a weapon, would place him in double jeopardy of criminal punishment for the same offense.[10]

■ The City argues that Coach was not placed in double jeopardy because the state charges were dismissed at the preliminary hearing and he was never tried on the merits of those charges. We agree. A defendant is not placed in jeopardy until a trial on the merits begins with either the swearing in of the jury in a jury trial or the swearing in of the first witness in a bench trial. *E.g., Crist v. Bretz*, 437 U.S. 28, 35-38, 57 L. Ed. 2d 24, 31-32, 98 S. Ct. 2156, 2160-61 (1978); *People v.*

---

[10]The double jeopardy argument presented to this court was only argued with reference to Coach. We note that Lee and Cates could not raise double jeopardy contentions because, as nonowners of the vehicles, they were not parties to the impoundment proceedings. If Jaudon was a co-owner of the impounded vehicle, he could have raised the double jeopardy bar but waived any such argument by not raising it in this court. See *Edgar*, 174 Ill. 2d at 11, 672 N.E.2d at 1183 ("a reviewing court may consider an issue not raised in the trial court if the issue one of law and is fully briefed and argued by the parties"). However, as will be discussed later in the text, any double jeopardy argument by Jaudon would fail because the impoundment fine was not punishment for purposes of double jeopardy.

*Parker*, 202 Ill. App. 3d 454, 559 N.E.2d 1068 (1990). Preliminary proceedings, including probable cause hearings, heard on motions before trial do not place a defendant in jeopardy for purposes of considering double-jeopardy-clause protection. *E.g.*, *People v. Knop*, 199 Ill. App. 3d 944, 557 N.E.2d 970 (1990); *People v. Anderson*, 92 Ill. App. 3d 849, 416 N.E.2d 78 (1981); *People v. Tate*, 47 Ill. App. 3d 33, 361 N.E.2d 748 (1977). Here, at a preliminary hearing held on April 15, 1997, the trial court found no probable cause to detain Coach on the state felony charge of unlawful use of a weapon and dismissed that charge. As a result, Coach was never placed in jeopardy when he was subject to the preliminary impoundment hearing held on April 16, 1997.

■ ■ A further reason for rejecting Coach's double jeopardy argument is the fact that the impoundment fine is not a punishment. It is not the "civil" nature of the fine that prevents the assertion of a double jeopardy contention. *United States v. Halper*, 490 U.S. 435, 447, 104 L. Ed. 2d 487, 501, 109 S. Ct. 1892, 1901 (1989), quoting *Hicks v. Feiock*, 485 U.S. 624, 631, 99 L. Ed. 2d 721, 731, 108 S. Ct. 1423, 1429 (1988) (" '[T]he labels affixed either to the proceeding or to the relief imposed *** are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law' "); *People v. Dvorak*, 276 Ill. App. 3d 544, 547, 658 N.E.2d 869, 873 (1995). Rather, "whether a given civil sanction constitutes punishment *** requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 501, 109 S. Ct. at 1901. The test for determining whether a civil fixed-penalty provision violates the double jeopardy protections of the federal constitution requires a balancing of the government's harm against the size of the penalty. *United States v. Ursery*, 518 U.S. 267, 284, 135 L. Ed. 2d 549, 565, 116 S. Ct. 2135, 2145 (1996), citing *Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892. As explained in *Halper*:

> "Where a defendant previously has sustained a criminal penalty and the *civil penalty* sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment." (Emphasis original.) *Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.

As also stated in *Halper*, the government is entitled to remedial justice and "may demand compensation according to somewhat imprecise

formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis." *Halper*, 490 U.S. at 446, 104 L. Ed. 2d at 500, 109 S. Ct. at 1900, discussing *Rex Trailer Co. v. United States*, 350 U.S. 148, 100 L. Ed. 149, 76 S. Ct. 219 (1956) (fine comparable to recovery under liquidated-damage provisions, providing measure of recovery where damages difficult to quantify, was not unreasonable or excessive so as to constitute a second criminal punishment in violation of double jeopardy), and *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 87 L. Ed. 443, 63 S. Ct. 379 (1943) (rejecting double jeopardy claim by defendant required to pay lump sum plus double damages totalling $315,000 where actual costs to the government totalled $101,500, court finding that fine afforded government complete indemnity for the injuries done not only as a result of the fraud but also as to ancillary costs of detection and investigation). *Halper* requires a case-by-case analysis to determine whether the amount of the fixed penalty is "so extreme" or "so divorced" from the penalty's nonpunitive purpose of compensating the Government so as to lack remedial character and thereby constitute punishment for purposes of double jeopardy analysis. *Ursery*, 518 U.S. at 284 & n.2, 135 L. Ed. 2d at 566 & n.2, 116 S. Ct. at 2145 & n.2, citing *Halper*, 490 U.S. at 448-51, 104 L. Ed. 2d at 501-04, 109 S. Ct. at 1903.

The *Halper* test as reiterated in *Ursery* was applied by an appellate court of this state to the civil penalty imposed under a City of Aurora impoundment ordinance similar to the impoundment ordinance in the instant case. See *People v. Ratliff*, 282 Ill. App. 3d 707, 669 N.E.2d 122 (1996) (reviewing Aurora Code of Ordinances § 29—48 (eff. December 21, 1993)). The Aurora ordinance reviewed in *Ratliff* allowed for seizure and impoundment of a motor vehicle used in violation of various enumerated ordinances and state criminal statutes. The owner of the vehicle was subject to a $500 penalty and fees for towing and storage. Aurora Code of Ordinances § 29—48 (eff. December 21, 1993).

Applying the balancing test espoused in *Halper*, the *Ratliff* court found that the $500 fine and assessment of towing and storage fees did not constitute a punishment for double jeopardy purposes. The court stated:

"We find $500 is a reasonable proxy for the likely actual administrative costs incurred by Aurora in preparing, prosecuting, hearing, and disposing of section 29—48 complaints. Additionally, we find that the $500 sanction is proportionate to the likely combined costs of the section 29—48 administrative proceeding and the societal

costs caused by defendants' use of their automobiles to commit one of the predicate offenses." *Ratliff*, 282 Ill. App. 3d at 713, 669 N.E.2d at 126.

We agree with the reasoning of *Ratliff* and find that the analogous penalty provision of section 8—20—015 of the Municipal Code likewise is not so extreme or so divorced from the penalty's nonpunitive purpose of compensating the City as to be the functional equivalent of a second punishment for double jeopardy purposes. See *Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.[11]

## II. Validity of Release Order

### Applicability of Home Rule Ordinance

Having rejected defendants' constitutional attacks on section 8—20—015 of the Chicago Municipal Code, we now address the City's contention that under section 8—20—015 the circuit court lacked authority to order the release of the vehicles impounded upon the defendants' arrests. In response, the defendants contend that the City ordinance governing impoundment is preempted by the circuit court's authority pursuant to sections 108—2 and 108—11 of the Code of Criminal Procedure of 1963 (the Criminal Procedure Code) (725 ILCS 5/108—2, 108—11 (West 1996)), which invest the court with authority to order the release of seized items pursuant to an arrest. Although neither of the circuit court judges cited to this provision as support for his actions, we will assume such reliance for the purpose of this argument.

Section 108—2 of the Criminal Procedure Code provides as follows:

"Custody and Disposition of Things Seized. An inventory of all instruments, articles or things seized on a search without warrant

---

[11]We note that the *Towers* court found the eighth amendment excessive fines clause applicable to the fines imposed under section 8—20—015 of the Municipal Code because they were not solely remedial and served a punitive purpose of deterring owners from allowing their vehicles to be used for prohibited purposes. *Towers*, 173 F.3d at 624. The United States Supreme Court noted in *Ursery* that the excessive fines clause of the eighth amendment is not parallel to or related to the double jeopardy clause of the fifth amendment and declined "to import the [eighth amendment] analysis *** into our double jeopardy jurisprudence." *Ursery*, 518 U.S. at 287, 135 L. Ed. 2d at 567, 116 S. Ct. at 2146; accord *Ratliff*, 282 Ill. App. 3d at 712, 669 N.E.2d at 125-26. It is when the sanction only serves either a deterrent or retributive function and no remedial function that it is said to constitute a punishment for double jeopardy purposes. See *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 1902, 109 S. Ct. at 1902.

shall be given to the person arrested and a copy thereof delivered to the judge before whom the person arrested is taken, and thereafter, such instruments, articles or things shall be handled and disposed of in accordance with Sections 108—11 and 108—12 of this Code. If the person arrested is released without a charge being preferred against him all instruments, articles or·things seized, other than contraband, shall be returned to him upon release." 725 ILCS 5/108—2 (West 1996).

Section 108—11 of the Criminal Procedure Code provides:

"The court before which the instruments, articles or things are returned shall enter an order providing for their custody pending further proceedings." 725 ILCS 5/108—11 (West 1996).

■ We cannot agree with defendants' contention that sections 108—2 and 108—11 of the Criminal Procedure Code preempt section 8—20—015 of the Municipal Code, which was enacted pursuant to the City's home rule power. In accordance with the Illinois Constitution of 1970, a home rule unit can "exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health [and] safety." Ill. Const. 1970, art. VII, § 6(a). Home rule units are granted the right to exercise such powers "concurrently with the State *** to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i); *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 470 N.E.2d 266 (1984) (upholding municipality's concurrent regulation of possession, use or transportation of weapons); *Seven Kegs*, 234 Ill. App. 3d·at 719, 599 N.E.2d at 1387 (upholding municipality's concurrent regulation of alcohol abuse although court found forfeiture statute unconstitutional as violative of the substantive due process rights of innocent owners who lacked privity with the offenders). *Cf*. Ill. Const. 1970, art. VII, §§ 6(g), (h) (providing methods by which General Assembly may preempt home rule power). Local governments can enact their own solutions to various problems of local concern, even in the face of less stringent or conflicting state regulation, provided the state's expression of interest in the subject as evidenced by its statutory scheme does not amount to an express attempt to declare the subject to be one requiring exclusive state control. *Kalodimos*, 103 Ill. 2d at 503, 470 N.E.2d at 275; accord *City of Chicago v. Roman*, 184 Ill. 2d 504, 705 N.E.2d 81 (1998) (upholding mandatory minimum sentence under ordinance for conviction of assault on an elderly person notwithstanding more flexible sentencing permitted under state criminal law); *Peters v. City of Springfield*, 57 Ill. 2d 142, 311 N.E.2d 107 (1974) (upholding ordinance

providing mandatory retirement age for policemen and firemen lower than that specified by state statute); *Provenzano v. City of Des Plaines*, 256 Ill. App. 3d 458, 629 N.E.2d 100 (1993) (upholding ordinance with mandatory retirement age higher than that provided in state statute); *City of De Kalb v. White*, 227 Ill. App. 3d 328, 591 N.E.2d 522 (1992) (upholding ordinance imposing fine in excess of that authorized for same offense under state criminal law).

▮ Here, it is apparent that there is no preemption by the state because there is no specific or express statement within sections 108—2 and 108—11 declaring the state's exclusive exercise of dominion over property seized at the time of arrest or, more particularly, property seized relative to an arrest for unlawful possession of a firearm. See Ill. Const. 1970, art. VII, § 6(i) (requiring the legislature to "specifically declare the State's exercise to be exclusive"). It is clear that the regulation of firearms falls within the constitutional home rule mandate insofar as it pertains to the regulation "for the protection of the public health [and] safety" (Ill. Const. 1970, art. VII, § 6(a)). The state and home rule units have concurrent power to regulate firearms control. See *Kalodimos*, 103 Ill. 2d at 506, 470 N.E.2d at 276, citing Ill. Rev. Stat. 1981, ch. 38, par. 83—13.1 (now at 430 ILCS 65/13.1 (West 1998)) (finding intent of legislature to allow concurrent exercise evidenced by statute providing for validity of municipal ordinances imposing greater restrictions or limitations on the acquisition, possession or transfer of firearms than are imposed by state statute)).

When the exercise of a power by the state and home rule units is concurrent, the courts must enforce ordinances promulgated by the latter, even where the ordinances are more stringent than State law. See, *e.g.*, *Kalodimos*, 103 Ill. 2d at 503, 470 N.E.2d at 275 (stating, "This court has upheld the right of local governments to enact their own solutions to various other problems of local concern in the face of less stringent or conflicting State regulation"). Such was the case in *Roman*, 184 Ill. 2d 504, 705 N.E.2d 81, where a City ordinance provided a more stringent sentence (a mandatory minimum sentence) for the offense of assault against the elderly than was provided by statute. See Chicago Municipal Code § 8—4—080 (1990). The trial court refused to impose the mandatory minimum sentence prescribed by ordinance, and the State appealed. After finding that the city had home rule power to prescribe the mandatory minimum sentence, the supreme court found that this power was not preempted by the state's sentencing scheme. The court reiterated the constitutional requirement for preemption, that is, declaration by the General Assembly that its exercise of power is exclusive. *Roman*, 184 Ill. 2d at 516, 705

N.E.2d at 88, citing Ill. Const. 1970, art. VII, § 6(i). In discussing that requirement, the court stated:

" 'Under section 6(i), the General Assembly can restrict the concurrent exercise of a home rule unit's power by enacting a law which specifically limits such power. But, unless a State law *specifically* states that a home rule unit's power is limited, then the authority of a home rule unit to act concurrently with the State cannot be considered restricted. This interpretation supports the home rule provisions of our constitution "which favor concurrent exercise of power by the state and by home rule units and attempt to avoid implied 'preemption' by judicial decisions. The Illinois approach places almost exclusive reliance on the legislature rather than the courts to keep home rule units in line." [Citation.]' (Emphasis in original.)" *Roman*, 184 Ill. 2d at 516-17, 705 N.E.2d at 89, quoting *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 187-88, 606 N.E.2d 1154, 1164 (1992).

As a further rejection of implied preemption by judicial decision, even where the state's regulatory scheme appears to be comprehensive, the *Roman* court stated:

"Some might believe that courts play an important role in invalidating home rule ordinances that are inconsistent with statutes or that invade a field fully occupied by state legislation. By applying judicial doctrines relating to conflict, inconsistency, and occupation of the field, the courts can, *inter alia*, promote uniformity of law. However, for several reasons, the 1970 Constitutional Convention was strongly opposed to 'judicial "preemption" ' and sought a means to reduce its importance." *Roman*, 184 Ill. 2d at 518, 705 N.E.2d at 89, quoting D. Baum, *A Tentative Survey of Illinois Home Rule (Part II): Legislative Control, Transition Problems, and Intergovernmental Conflict*, 1972 U. Ill. L.F. 559, 572.

In the instant case, neither section 108—2 nor section 108—11 of the Criminal Procedure Code nor any other statutory provision specifically declares the state's exclusive dominion over the disposition of property seized at the time of arrest or property seized pursuant to the commission of firearms violations. Absent such express declaration, preemption cannot be implied by judicial fiat, which is, in effect, what the circuit court implicitly attempted in this case, if we assume that the circuit court purported to assert authority under sections 108—2 and 108—11, as the appellees now contend. " 'The Illinois approach [to home rule] places almost exclusive reliance on the legislature rather than the courts to keep home rule units in line.' 1972 U. Ill. L.F. at 579." *Scadron*, 153 Ill. 2d at 188, 606 N.E.2d at 1164.

■ There can be no question that the circuit court would be required to return noncontraband inventoried items seized at the time of arrest when proceedings relative to all state charges have been concluded, assuming, of course, that those are the only charges pending. See 725 ILCS 5/108—2, 108—10, 108—11 (West 1996). However, where, as here, property was seized and impounded pursuant to a home rule ordinance, and where that impoundment is subject to a separate administrative adjudication, the pendency of the latter adjudication would prevent the circuit court from returning that property upon resolution of the State charges. This is particularly so when, as here, the reason for the seizure and impoundment by the City was to ensure payment of the civil fine mandated by section 8—20—015 of the Chicago Municipal Code. The impounded vehicle serves as collateral to ensure the City's receipt of the fine. In the event that payment is not forthcoming, the City can sell the vehicle and apply the proceeds to the fine and charges. See Chicago City Council Journal of Proceedings § 8—20—015(e), at 25035 (July 10, 1996) (empowering City to sell the vehicle to satisfy the debt). The release of the vehicle prior to disposition of the municipal proceedings would clearly undermine the City's ability to recover that fine. Thus, even if we were to construe the scope of sections 108—2 and 108—11 of the Criminal Procedure Code to encompass impounded vehicles so as to authorize the circuit court under state law to return the vehicles,[12] that authority would be restricted by the City's ordinance, which forbids release of impounded vehicles until compliance with that ordinance has occurred. See, e.g., Roman, 184 Ill. 2d 504, 705 N.E.2d 81; Scadron, 153 Ill. 2d 164, 606 N.E.2d 1154 (finding trial court was without authority to impose a sentence less than the mandatory minimum sentence prescribed by ordinance); White, 227 Ill. App. 3d 328, 591 N.E.2d 522 (finding trial court was without authority to ignore municipal ordinance penalty provision); City of Naperville v. Bernard, 139 Ill. App. 3d 784, 487 N.E.2d 771 (1985) (same). Accordingly, it is clear that the orders

---

[12]The City questions the initial application of sections 108—2 and 108—11 of the Criminal Procedure Code to the seizures in the instant case on various grounds including the fact that the vehicles were not inventoried, were not included in any inventory submitted to the circuit courts, and were not directly related to the defendants' arrests on the state charges. The City contends that the impoundment of the vehicles occurred solely pursuant to the impoundment ordinance and as such would not come within the ambit of the authority entrusted to the circuit courts under sections 108—2 and 108—11 of the Criminal Procedure Code. Based upon our analysis of the home rule powers of the City, however, we need not address these contentions.

entered by the circuit court relating to the impounded vehicles were made without authority.[13]

For the foregoing reasons, the circuit courts' orders directing the City to release the impounded vehicles without costs are vacated and the judgment of contempt against the City, Susan Sher, Norma Reyes and Thomas Dumb is reversed.

Nos. 1—97—0046, 1—97—1125, 1—97—1192, 1—97—1193, 1—97—1748, 1—97—1777, 1—97—1914, Orders vacated.

No. 1—97—1776, Judgment reversed.

RAKOWSKI and COUSINS, JJ., concur.

---

[13]Due to the page limitations imposed under revised Supreme Court Rule 23 (166 Ill. 2d R. 23), we are compelled to delete from the published portion of this opinion our findings that the court lacked subject matter jurisdiction because it ignored the home rule ordinance and administrative adjudication process mandated by that ordinance. We must also delete discussion of our reversal of the contempt judgment based upon our findings that the underlying release orders were void *ab initio* because the circuit courts lacked jurisdiction to enter them; that a portion of the contempt fines, those which were retroactive and thus indicative of indirect criminal contempt, were improper due to the absence of due process protections; and that the failure to comply with the underlying release order was a good-faith effort to test the void circuit court release order. Our discussion of these issues is included in the full, unabridged text of this opinion which is on file with the clerk of this court under Docket Nos. 1—97—0046, 1—97—1125, 1—97—1192, 1—97—1193, 1—97—1748, 1—97—1776, 1—97—1777, 1—97—1914 (cons.).